STATE OF NORTH CAROLINA v. ARTHUR LEE McDONALD

No. 7120SC307

(Filed 23 June 1971)

1. Criminal Law § 161— record on appeal — requisite of exceptions

The appellant is required to point out in his brief the numbered exception upon which he is relying and to indicate upon what page of the printed record the exception may be found. Court of Appeals Rule of Practice No. 28.

2. Criminal Law § 166— appeal — abandonment of exceptions

Exceptions for which no argument or authority is given are deemed abandoned. Rule of Practice No. 28.

3. Criminal Law § 42— introduction of exhibits — defendant's right of examination

Defendant's contention that the State introduced into evidence certain exhibits which he had not been permitted to examine prior to trial, *held* without merit. G.S. 15-155.4.

4. Criminal Law § 66— identification of defendant — contention of illegality

Contention that the victim's in-court identification of the defendant as the perpetrator of the crimes was tainted by illegal out-of-court procedures, including illegal photographic identification, *held* without merit.

APPEAL by defendant from *Braswell, Judge,* 15 October 1970 Session of Superior Court held in UNION County.

This is a criminal prosecution upon two bills of indictment charging the defendant with assaulting Laura Morgan and Jack Morgan with a deadly weapon with intent to kill inflicting serious injuries, in violation of G.S. 14-32(a).

The defendant, represented by privately employed counsel, pleaded not guilty to the bills of indictment.

The State offered evidence tending to establish the following facts: At approximately 7:00 p.m. on 25 June 1970, Miss Laura Morgan (74 years old) and her brother, Jack Morgan (76 years old), were assaulted by two black men. The assaults on this elderly couple apparently occurred during an attempted robbery at their isolated farm homeplace located in the northern part of Union County.

The Union County Sheriff's office was notified of the assaults within fifteen minutes thereafter at approximately 7:00 p.m. By 7:20 p.m., Deputy Sheriff Myers had arrived at the Morgan homeplace and was talking with Miss Morgan.

Miss Morgan gave a description of the assailants to the police authorities. She described one of the assailants generally as follows: He had a little streak of beard around his chin, he was black, his beard and hair were black and neither was artificial, he was about 5' 7 or 8" tall, and he wore a white shirt and dark pants at the time of the assaults.

Miss Morgan testified that she and her brother were assaulted with a lug wrench (tire tool) after having been tied up with adhesive tape. Her face and head were cut severely.

During the beatings, both Morgans resisted, and during the scuffle Jack Morgan pulled a .22 caliber pistol and shot one of his assailants. Blood was found inside the Morgan home and a trail of blood from the assailant was found leading from the inside of their home to the get-away automobile, a yellow Chevelle, parked in the driveway outside their home. Also, Jack Morgan shot at and hit the get-away car as it was leaving his home with a .410 gauge shotgun.

Following the assaults and the arrival of police, the injured Miss Morgan was taken to the Union County Memorial Hospital. Jack Morgan, also injured, stayed at home and was treated only by a nurse, though a physician saw him at the homeplace about ten days later. Miss Morgan's treating physician said he saw her at the hospital about 7:30 to 8:00 p.m. and she had then lost a great deal of blood, was weak, almost in shock.

The State also offered evidence tending to show that the defendant called an ambulance and the Mecklenburg County Police and reported that he had been kidnapped, robbed, and shot.

As a result of this report, the defendant was found near the yellow Chevelle somewhere in the vicinity of the Cabarrus County line. The defendant was hospitalized in Charlotte where he was questioned and photographed by the Mecklenburg County Police. He was also seen in the hospital by Union County Deputy Sheriff Myers.

The defendant offered evidence that on 25 June 1970, at about 3:45 p.m., he was driving his mother's yellow Chevelle along the Old Monroe Road when he stopped to pick up a black male hitchhiker. After continuing for a short distance, the hitchhiker drew a pistol on him and ordered him to pull off the road behind a pickup truck parked along the shoulder. Two men, one white and one black, got out of the pickup and came back to the defendant's automobile. After some discussion, the white man went back to the pickup and the black man got into the defendant's automobile on the driver's side. Both the pickup and the automobile then proceeded to The Hideaway Fish Camp where the defendant was robbed and locked in the trunk. The defendant estimated that the automobile was driven for 45 minutes, then stopped for approximately 10 or 15 minutes, and then driven again for 35 or 45 minutes. At this point defendant was taken out of the trunk and shot by one of the two black men who had been in the automobile. The defendant passed out, and after coming to he walked to a nearby house and had the police and an ambulance called. After relating this story to the police who came to the scene, he was taken to Charlotte Memorial Hospital.

Before State's witness, Miss Morgan, was permitted to identify the defendant as one of the assailants, the court held a *voir dire* as to the identification of the defendant by the witness. In the absence of the jury, Miss Morgan testified that late in the afternoon on the day she and her brother were assaulted, she first saw the defendant and another man at the front of her house near the steps when she returned from feeding her chickens. The defendant, Arthur Lee McDonald, was in her presence for approximately 15 minutes before he left in the yellow Chevelle automobile which Miss Morgan had observed parked in her driveway. The defendant asked Miss Morgan if she made sweaters, and tried on a sweater, size 38, which was too large for him. The defendant took off the sweater and threw it at Miss Morgan. He knocked her down and bound her hands and

feet. The witness testified that she wore glasses to read, sew, and drive an automobile, and when she first saw the defendant she was wearing her glasses which were knocked off when she was assaulted. Miss Morgan described the defendant in considerable detail. She had never seen the man before, and stated that she based her identification of him on his face as it appeared on the day of the assault.

The court on *voir dire* also heard the testimony of Officers Eugene C. Myers and H. C. Dutton, both with the Sheriff's Department of Union County.

At the conclusion of the *voir dire* hearing, and from the evidence produced at the hearing, the court made detailed findings of fact as to what the witness Laura Morgan observed at her home on the occasion she and her brother were assaulted. As to her opportunity and ability to see and observe the assailants, the court made thorough findings of fact as to what transpired immediately before, during, and after the alleged assaults, and what the investigating officers did both in Union and Mecklenburg Counties. The court made findings of fact as to all of the circumstances surrounding the defendant's arrest and hospitalization, and as to the taking of the defendant's photograph and the use thereof.

Based on the evidence and its findings of fact, the court made and entered in the record extensive conclusions which include the following:

"The Court concludes that Miss Morgan has made photographic identification of this defendant and has made in-court identification of this defendant at the Preliminary Hearing and that nothing has happened or transpired so as to exclude her present in-court identification of the defendant as one of the perpetrators of the alleged assault.

"The Court further concludes that there has been no misidentification by Miss Morgan of the defendant; that her identification comes from her own memory and was as retained in her own mind of the defendant; that there is nothing within the several photographs in evidence so as to impose upon her memory the image of the person depicted in the photograph rather than the person whom she actually saw and whom she alleged actually assaulted her on the occasion complained of; that there is nothing

about Miss Morgan's identification so as to reduce the same to untrustworthiness and also that the photographic identification procedure which was used in each incident was not so impermissively suggestive as to give rise to any likelihood or substantial likelihood of irrefutable misidentification, and the Court concludes, as a matter of law beyond a reasonable doubt, it is now proper for Miss Morgan to make identification of the defendant in the courtroom as the perpetrator of the alleged offenses.

\* \* \*

" . . . the Court concludes, as a matter of law, that he was not unlawfully detained by any officer of Mecklenburg or Charlotte so far as the evidence before this court reflects and that there is nothing in this evidence to show in the slightest that any of the constitutional rights of this defendant were violated when photographs were taken of him at the Charlotte Hospital. . . . "

The jury found the defendant guilty of felonious assault with intent to kill upon Laura Morgan as charged in the bill of indictment, and guilty of misdemeanor assault with a deadly weapon upon Jack Morgan.

From a judgment of imprisonment of nine years for the assault upon Laura Morgan, and two years for the assault upon Jack Morgan, the sentences to run concurrently, the defendant appealed.

*Attorney General Robert Morgan and Associate Attorney Walter E. Ricks III for the State.*

*Clark, Huffman & Griffin by Robert L. Huffman for defendant appellant.*

HEDRICK, Judge.

Rule 28 of the Rules of Practice in this Court provides in pertinent part: "The brief of appellant . . . shall contain, properly numbered, the several grounds of exception and assignment of error with reference to the pages of the record. . . . "

[1] The rule simply requires that appellant, in his brief, point out the numbered exception upon which he is relying and indicate upon what page of the printed record the exception may

be found. In the instant case, the numbered exception relied on in the brief does not appear on the printed page of the record to which we are referred. When the printed record is as voluminous as in the instant case, 175 pages with 125 exceptions, it is most difficult for the Court to locate the specific exception upon which appellant relies if counsel has failed to comply with that portion of Rule 28 quoted above.

The defendant states his first question as follows:

"(1) Whether the police authorities failed to either produce the results of or make certain scientific tests and procedures analyzing physical facts, which if produced or made would and could have completely proven the guilt or innocence of defendant in these criminal actions and, therefore, are in violation of the due process requirements of the fourteenth amendment?"

[2] Defendant, in his brief, states that this argument covers exceptions 39-46, 55-60, 62-71, 88-93, 101-106, 115-117, and 120-125. After voyaging through the printed record we have discovered that 43 of these exceptions are not related to the question quoted above. These exceptions relate primarily to the admissibility of evidence, the denial of defendant's motions to strike certain testimony, the court's rulings on defendant's various motions for dismissal and mistrial, and the court's findings and conclusions with respect to the *voir dire* examination of Miss Morgan and other State's witnesses.

Since defendant has not stated any reason or argument nor cited any authority in support of these 43 exceptions, they are deemed abandoned by him. Rule 28, Rules of Practice in the Court of Appeals of North Carolina.

[3] Exception 44 relates to the court's denial of the defendant's motion regarding the use at trial of certain exhibits. The record reveals that the court, upon motion of the defendant, ordered the State to deliver certain exhibits to the defendant's counsel for examination before trial, and the record further reveals compliance with this order by the State. Before any evidence was introduced at the trial, defendant moved that the State not be permitted to use any exhibits or evidence which defendant had requested, but had not had an opportunity to examine. Pursuant to G.S. 15-155.4, the solicitor in a criminal trial is obligated to furnish certain specifically identified exhibits

to the defendant to better enable him to prepare his defense. *State v. Macon,* 276 N.C. 466, 173 S.E. 2d 286 (1970). The record reveals that all the exhibits requested by the defendant and not made available for examination by him were either non-existent, unavailable, or not offered in evidence at the trial. This exception is without merit.

Defendant contends by Exception No. 122 that the court committed prejudicial error by denying his motion for a mistrial "on the grounds that blood sample tests were apparently ordered and fingerprint tests were apparently ordered and these were never produced." This exception is without merit. There is no evidence in the record that any blood tests were ever made. There is evidence that the automobile driven by the defendant, and owned by his mother, was "dusted for fingerprints," but there is no evidence whatsoever as to whether any prints were found or lifted from the automobile.

[4] Next, the defendant contends, by numerous assignments of error, that the in-court identification of the defendant as the perpetrator of the crimes charged in the bills of indictment by the victim, Miss Morgan, was tainted by illegal out-of-court procedures by law enforcement officers, including illegal photographic identification procedures.

In *State v. Accor* and *State v. Moore,* 277 N.C. 65, 175 S.E. 2d 583 (1970), Chief Justice Bobbitt stated the rule to be followed by the trial court with respect to the admissibility of an in-court identification:

> "[T]he court must determine upon the evidence *then* before it whether 'the photographic identification procedure' was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' *Simmons v. United States, supra.* Whatever the indicated prior determinations may be with reference to the out-of-court photographic identifications, the court must make an additional factual determination as to whether the State has established by clear and convincing proof that the in-court identifications were of independent origin and were untainted by the illegality, if any, underlying the photographic identifications."

In the instant case, the able trial judge followed precisely the procedure outlined by Chief Justice Bobbitt. The court held

a *voir dire* hearing and made detailed findings and conclusions that Miss Morgan's in-court identification of the defendant as one of the assailants was "one of her own recollection as an eyewitness and as one who personally experienced the event and that the same is not tainted by any unconstitutional or illegal procedure. . . . "

We have examined the entire record of the *voir dire* hearing and find and hold that the court's findings and conclusions are amply supported by the evidence. From a careful examination and review of each exception in the record, it is our opinion that the defendant had a fair trial free from prejudicial error.

No error.

Judges BROCK and MORRIS concur.