STATE OF NORTH CAROLINA· v. KENNETH SHUTT

No. 13

(Filed 15 December 1971)

**1. Rape § 18— assault with intent to rape**
    The State's evidence was sufficient for the jury in this prosecution for assault with intent to commit rape allegedly committed in the elevator of a public building.

**2. Criminal Law § 97—admission of evidence after jury has begun deliberations**
    It was within the discretion of the trial judge to reopen the case and to allow the State to present additional evidence after both parties had rested and even after the jury had retired for its deliberations.

**3. Criminal Law § 114— instructions — expression of opinion**
    The trial court did not express an opinion in its instructions in this prosecution for assault with intent to commit rape.

**4. Rape § 18— assault with intent to rape — intent required**
    The trial court did not fail to instruct the jury that the requisite intent in an assault to commit rape is an intent to have sexual intercourse with the prosecutrix notwithstanding any resistance that she might make.

**5. Criminal Law § 34— evidence that defendant was Work Release inmate**
    In this prosecution for assault with intent to commit rape, the trial court did not err in the admission of testimony that defendant was

an inmate of a certain prison camp and a participant in the Work Release Program, and that work release prisoners were picked up at the end of their work day by a bus stopping at the building where the alleged assault occurred, since the testimony tended to place defendant at the scene of the assault at the approximate time it allegedly occurred, nothwithstanding such testimony also tended to show that defendant had committed other offenses.

**6. Criminal Law §§ 66, 169— admission of book of photographs and defendant's photograph — absence of prejudice**

Defendant was not prejudiced by the admission into evidence of two books of photographs shown to an assault victim and the photograph of defendant selected by her therefrom, where such evidence was introduced while the jury was out of the courtroom engaged in its deliberations and nothing in the record indicates that the jury ever saw the photograph of defendant or the other contents of the books.

**7. Criminal Law § 66— photographic identification**

In this prosecution for assault with intent to commit rape, the trial court did not err in admitting, over objection, testimony by the prosecutrix that immediately after the assault she examined two books of photographs shown to her by police officers and from the second book selected the photograph of defendant as her assailant, where there is nothing in the record to indicate that the collection of photographs or the manner in which they were exhibited to the prosecutrix was unduly suggestive or contributed impermissibly to her selection of defendant's photograph.

**8. Criminal Law § 66— photographic identification — necessity for voir dire**

Although a voir dire hearing held prior to the introduction of any evidence related primarily to a lineup identification, there was no necessity for the court to conduct a second voir dire at the time of the prosecutrix' testimony before the jury concerning a photographic identification of defendant, where her testimony on voir dire had disclosed her identification of the photograph prior to the lineup, she had been cross-examined as to this by defendant's counsel on voir dire, and the voir dire disclosed no suggestion of impropriety in the photographic identification procedure.

**9. Criminal Law § 66— lineup — defendant's name on his shirt**

Although an assault victim observed the name "Kenneth" on the shirt of her assailant and was told by the police that the name of the man whose photograph she had selected as her assailant was Kenneth Shutt, a lineup subsequently conducted at a prison camp was not rendered unnecessarily suggestive by the fact that the men in the lineup wore uniform shirts on which their respective names appeared, where the victim was approximately 40 feet from the place where the men stood in the lineup and it was unlikely that defendant's name upon his shirt was legible at that distance.

**10. Criminal Law § 66— lineup — right to counsel**

Defendant's constitutional rights were violated by a pretrial lineup at which he was not represented by counsel, was not informed of his right to counsel and did not waive his right to counsel.

**11. Criminal Law § 66— illegal pretrial identification — independent origin of in-court identification**

In a prosecution for assault with intent to commit rape, the trial court did not err in admitting the victim's in-court identification of defendant, notwithstanding the victim had identified defendant in an illegal pretrial lineup, where the evidence on voir dire fully supported the court's findings that the in-court identification was based on factors complete and independent of the lineup identification and was based entirely on what the victim observed at the time of and before the alleged assault.

**12. Criminal Law §§ 84, 169— admission of unlawfully obtained evidence — harmless error**

Admission, over objection, of evidence obtained in violation of a right guaranteed the defendant by the Constitution of the United States is harmless error only if the court can declare that there is no reasonable possibility that such evidence contributed to the conviction.

**13. Criminal Law §§ 66, 169— evidence of illegal lineup identification — harmless error**

In this prosecution for assault with intent to commit rape, the admission, over objection, of evidence of the victim's identification of defendant at an illegal pretrial lineup was harmless error beyond a reasonable doubt where the victim's in-court identification of defendant was clear, positive and unequivocal, the victim testified that she conversed with defendant for five minutes in the corridor of a public building before getting into a lighted elevator with him, where the assault allegedly occurred, the victim picked defendant's photograph from a large collection of photographs within minutes after the assault occurred, her observation of him an hour or two later in a lineup could have added nothing to her ability to identify him in court and her testimony concerning the lineup added nothing to the persuasiveness of her positive identification of him in the courtroom, and her in-court identification was supported by testimony of another witness.

APPEAL by defendant from *Martin, S.J.*, at the 11 December 1970 Session of GUILFORD, heard prior to determination by the Court of Appeals.

Upon an indictment, proper in form, the defendant was found guilty of assault with intent to commit rape and was sentenced to a term of 12 to 15 years in the State's prison. The evidence introduced by the State tended to show:

On 16 July 1970, at 4:45 p.m., Marilee Henderson was on the second floor of the City-County Building in High Point. Her husband was then confined in the jail in that building. She had just talked by telephone to his employer about procuring his release. Following the telephone conversation she observed the defendant standing nearby. No one else was present.

The defendant engaged Mrs. Henderson in conversation, stated that his name was Fred Tedder and told her that he could get her husband out of jail if she wanted him to do so. She replied it did not matter who got her husband out of jail so long as he was released. She and the defendant got on the elevator together three to five minutes after the beginning of the conversation. The defendant pushed the emergency "stop button" but also pushed another button and the elevator began to move upward. The defendant, by an obscene remark, stated his intent to have sexual relations with Mrs. Henderson, grabbed hold of her and began pulling off her underclothes. She struggled with him and began screaming. The elevator door came open and the defendant ran out. He went first in one direction and then in another and disappeared.

Mrs. Henderson, observing the janitor cleaning the floor, the elevator having gone to the third floor, called to him to stop the defendant and said the defendant had tried to rape her. The janitor summoned the police, who came promptly.

The officers took Mrs. Henderson to a lower floor of the building where they showed her two books of pictures of individuals. After going completely through one book and through ten or fifteen pages of the second, she selected the picture of the defendant as being a photograph of the man who had attacked her in the elevator. (The books were identified by Mrs. Henderson and were subsequently offered in evidence, but there is nothing in the record to indicate that either of the books or the photograph so selected by her was exhibited to the jury.)

The officers then took Mrs. Henderson out to Sandy Ridge, a camp for prisoners on work release. There she, remaining in the office, observed through the window three white men, all dressed in prison uniform, dark pants and light blue shirt, come to and stand at the fence of the prison yard, and from them she picked the defendant as the man who had attacked her in the elevator.

State v. Shutt

At the trial, Mrs. Henderson positively identified the defendant, sitting in the courtroom, as the man who had so attacked her. She and the defendant were together in the elevator a minute or two from the time the door closed on the second floor until it opened on the third floor. In that interval she observed the name "Kenneth" on his shirt.

The janitor, who observed a man and Mrs. Henderson come out of the elevator on the third floor, testified that she appeared to be frightened, that the man walked rapidly away and that his manner of walking was like that of the defendant.

Before any evidence was introduced, the defendant moved to suppress the testimony of Mrs. Henderson and requested a voir dire, which was conducted in the absence of the jury. On the voir dire, the defendant testified:

On the day of the alleged offense, he was serving a sentence at the Sandy Ridge Prison Camp and was there placed in a lineup in connection with the offense here in question. The lineup consisted of three or four other prisoners, selected at random and all dressed in the prison uniform with their names thereon. The men were lined up inside the fence, the defendant being told that they were viewed from inside the office. The name "Kenneth" was on his uniform. Prior to the lineup, he was not advised that he had a right to counsel before being placed in the lineup. Prison officials simply told the men to go and stand at the fence. At that time he had not been arrested for the offense now in question and was not told why he was placed in the lineup. He was told that he was a suspect in a case but was not told the nature of it. He did not object to being in the lineup, going to the fence pursuant to the order of the prison official. Earlier in the same day, he had been away from the prison camp, pursuant to the work release program. From the fence to the office, from which he and his companions in the lineup were viewed, is approximately 35 feet. They were standing two feet inside the fence.

Upon the voir dire, Mrs. Henderson testified concerning the circumstances of the attack, as subsequently testified to by her before the jury, and also testified:

In their conversation preceding the attack upon her, the defendant, having told her his name was Fred Tedder, said that

he was the son of Jack Tedder, a bondsman in the city whom she knew. She was able to see her assailant's face in the elevator, which was not dark. When she selected the defendant's photograph from the book shown her by the police officers immediately following the attack, she was told by one of the officers that the man shown in the photograph had walked out of the prison camp and that his name was Kenneth Shutt. The officers suggested that they go out to the Sandy Ridge Prison Camp and let Mrs. Henderson see if "that is the one." Standing inside the office at the camp, she looked out of the window. Three white men, dressed alike, were brought up to the fence and she picked the defendant from among the three as the man who had attacked her. One of the three men was taller than the defendant and the other about the same size. She was alone in the office when viewing the three men. He looked like the picture she had seen. She based her identification on having seen him in the elevator. She knew him the next time she saw him. She knew him "in the book" and she knew him in the courtroom. She would not forget his face.

At the conclusion of the voir dire, the court found as a fact that Mrs. Henderson first saw the defendant for approximately five minutes and had a conservation with him and thereafter observed him in a lighted elevator while standing in close proximity to him; that she had ample opportunity to observe him and did observe him; that the in-court identification was based upon her observation of the defendant other than at the lineup; and that her identification of him in the lineup had its origin in her identification of him at and before the time of the alleged assault. The court further found as a fact that her identification of the defendant in court was based upon factors complete and independent of the lineup and entirely on what she observed at the time of and before the alleged assault. The defendant's motion to suppress the testimony of Mrs. Henderson was therefore overruled.

*Attorney General Morgan, Deputy Attorney General Moody and staff Attorney Lloyd for the State.*

*Wallace C. Harrelson for defendant.*

LAKE, Justice.

[1]    The defendant assigns as error the denial of his motion for judgment of nonsuit. There is no merit in this assignment of

error. Upon such motion, all of the evidence for the State which is admitted, whether competent or incompetent and whether admitted over objection or otherwise, is considered, is taken to be true and is considered in the light most favorable to the State. *State v. Roseman*, 279 N.C. 573, 184 S.E. 2d 289, decided November 10, 1971, and cases there cited. So considered, the evidence is clearly sufficient to support a finding that the offense charged in the bill of indictment was committed and that the defendant was the person who committed it.

[2]   After the State rested and after the solicitor had made his argument to the jury, but prior to the argument by counsel for the defendant, the State was permitted, over objection, to recall one of its witnesses, Sergeant Johnson, to testify that the Sandy Ridge Prison Camp is a unit for prisoners assigned to the Work Release Program and that the bus upon which prisoners returned to the camp after their work day stopped in front of the building where the alleged assault occurred. Again, after the conclusion of all arguments and the charge to the jury and after the jury had retired and commenced its deliberations, over objection, the State was permitted to reopen its case once more and to introduce in evidence the books of photographs and the picture of the defendant selected therefrom by Mrs. Henderson, which exhibits had previously been identified. Nothing in the record indicates that the jury was recalled to the courtroom or that these exhibits were ever exhibited to it. It is well settled that it is within the discretion of the trial judge to reopen a case and to admit additional evidence after both parties have rested and even after the jury has retired for its deliberations. *State v. Jackson*, 265 N.C. 558, 144 S.E. 2d 584; *State v. Perry*, 231 N.C. 467, 57 S.E. 2d 774; *State v. Page*, 215 N.C. 333, 1 S.E. 2d 887; *State v. Noblett*, 47 N.C. 418; Stansbury, North Carolina Evidence, 2d Ed, § 24.

[3]   The defendant's Assignments of Error 10 through 14 relate to excerpts from the charge of the court to the jury. There is no merit in any of these and a detailed discussion of them would serve no useful purpose. Two of them are directed to the court's review of the evidence. Nothing in the record indicates that any error therein was called to the attention of the judge before the jury retired. They do not, as the defendant contends, constitute expressions of opinion by the court. The following state-

ment by Justice Barnhill, later Chief Justice, in *State v. Jessup*, 219 N.C. 620, 14 S.E. 2d 668, is pertinent to these assignments:

"The defendant complains, first, that the court, in detailing the evidence, expressed an opinion that certain facts were fully proven. This contention cannot be sustained. In reviewing the evidence the court clearly indicated that it was so doing by making reference to the witness and then detailing the substance of his testimony. A careful examination of the charge discloses that when it is considered as a whole the court below carefully followed the requirements of C.S., 564 [G.S. 1-180], in stating the evidence in a plain and correct manner. The defendant is not permitted to segregate clauses or sentences thereof which, when considered alone, unrelated to the charge as a whole, make it appear that the judge was indicating his own personal opinion in respect to the weight and sufficiency of the evidence."

[4] Assignment of Error 13 is that the court erred in charging the jury:

". . . at any time during the assault he had the intent to have sexual relations or intercourse with the prosecuting witness forcibly and against her will, although before the act of intercourse the prosecuting witness might have consented, or if he abandoned that intent by reason of her resistance."

In his brief the defendant says in support of this assignment of error:

"The trial court defined intent as 'intent to have sexual relations or intercourse with the prosecuting witness forcibly and against her will . . . .' Such a charge as this ignores the required disregard of the victim's resistance and is insufficient, *State v. Moose*, 267 N.C. 97, 147 S.E. 2d 521."

The portion of the charge immediately preceding the sentence thus partially quoted by the defendant reads as follows:

"To convict one charged with an assault with intent to commit rape, the evidence must show beyond a reasonable doubt not only an assault, as I have just defined, but an intent upon the part of the defendant to have sexual inter-

course with the prosecuting witness, *notwithstanding any resistance that she might make. Any intent short of this is not an assault with intent to commit rape.*" (Emphasis added.)

Not only did the trial judge instruct the jury in the immediate context of the statement assigned as error precisely as the defendant says he should have done, but at least three times thereafter he repeated this instruction and it was the final instruction to the jury on that point. The defendant's statement of this assignment of error and his argument in support thereof cannot be deemed consistent with the duty of counsel to this Court to state fairly and correctly the charge given by the trial judge.

[5] Turning to the content of the evidence which the court permitted the State to introduce after it had originally rested, we find no error in admitting the testimony that prisoners, returning to the Sandy Ridge Camp at the end of their day on work release jobs, were picked up by a bus stopping at the building where the alleged assault occurred. Nor was there error in admitting the earlier testimony that the defendant was an inmate of the camp and a participant in the Work Release Program.

This testimony was relevant upon the question of whether this defendant was the perpetrator of the assault, for it tended to place him at the scene of the assault at the approximate time that it is alleged to have occurred. With reference to the admissibility of evidence tending to show the defendant in a criminal action has committed other offenses, Professor Stansbury has correctly stated the rule as follows:

"This is commonly supposed to be a somewhat difficult and complex field, marked out by a general rule of exclusion and a series of exceptions. It is submitted, however, that the rule is in fact a simple one which, when accurately stated, is subject to no exceptions: Evidence of other offenses is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of

an independent crime." Stansbury, North Carolina Evidence, 2d Ed. § 91.

**[6]** As to the admission into evidence of the books of photographs shown to Mrs. Henderson and the photograph of the defendant selected by her therefrom, it is sufficient to note that nothing in the record indicates that the jury ever saw the photograph of the defendant or the other contents of the books. On the contrary, it appears from the record that these were introduced in evidence while the jury was out of the courtroom engaged in its deliberations, the offer and introduction of this evidence being purely formal. The books and the photograph of the defendant selected therefrom had previously been identified by witnesses in the presence of the jury. Therefore, it is apparent that the jury did observe in the hand of the witness, or of counsel, the outsides of the books and the sheet of paper bearing the photograph, but nothing indicates that the picture, itself, was ever in a position to be observed by the jury. The defendant was not prejudiced and the State was not benefited in any way by the actual introduction of these documents into evidence.

**[7]** Again, there was no error in admitting, over objection, the testimony of Mrs. Henderson to the effect that, immediately after the alleged assault, the police officers, who came in response to the janitor's request, took her to an office on the first floor and that there she examined two books of photographs, from the second of which she selected a photograph identified by the officers as that of the defendant.

There is nothing whatever in the record to indicate that the collection of photographs, so shown to Mrs. Henderson within a very few moments after she was assaulted, or that the manner in which they were exhibited to her was unduly suggestive or contributed impermissibly to her selection of the photograph of the defendant as a picture of her assailant. With reference to identification of a criminal suspect by the selection of his photograph from amongst those of other persons, the Supreme Court of the United States said, in *Simmons v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247:

"Simmons, however, does not contend that he was entitled to counsel at the time the pictures were shown to the witnesses. Rather, he asserts simply that in the circumstances the identification procedure was so unduly preju-

dicial as fatally to taint his conviction. This is a claim which must be evaluated in light of the totality of surrounding circumstances. * * *

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power [over the lower Federal courts] or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

In *State v. Accor* and *State v. Moore*, 277 N.C. 65, 175 S.E. 2d 583, this Court, speaking through Chief Justice Bobbitt, said:

"[I]n our view, if either defendant was in actual custody but with no charge against him related to the alleged burglary when the photographic identifications were made which led to the issuance of a warrant and his arrest on the burglary charge, his Sixth Amendment rights were not violated solely because he was not represented by counsel when such photographic identifications were made. * * *

"In our view, the doctrine of Wade [*United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149] and Gilbert [*Gilbert v. California*, 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178] *should not be extended* to out-of-court examinations of photographs including that of *a suspect*, whether the suspect be at liberty or in custody."

[8] Nothing in the record indicates that the photograph of the defendant so shown to and selected by Mrs. Henderson was un-

lawfully taken. Prior to the introduction of any evidence, the defendant moved to suppress the testimony of Mrs. Henderson concerning her identification of the defendant and, at his request, a voir dire was had in the absence of the jury. While this related primarily to the identification of the defendant by Mrs. Henderson at the lineup conducted at the Sandy Ridge Prison Camp, Mrs. Henderson's testimony on voir dire disclosed her identification of the photograph prior to the lineup. As to this, she was cross examined by the defendant's counsel on voir dire. There was no necessity for the court to conduct a second voir dire at the time of Mrs. Henderson's testimony before the jury concerning her identification of the photograph. The voir dire disclosed no suggestion of impropriety in connection with the examination of the photographs. There is no merit in this assignment of error.

[9]   There was error in the admission, over objection, of the evidence, introduced by the State, concerning Mrs. Henderson's identification of the defendant at the lineup conducted at the Sandy Ridge Camp. We do not reach this conclusion by reason of the fact that evidence on the voir dire showed that the men in the lineup wore uniform shirts on which their respective first names appeared. It is true that, before viewing the lineup, Mrs. Henderson had been told that the photograph selected by her was a photograph of a man named Kenneth Shutt, and that she had observed the name "Kenneth" on the shirt of her assailant. However, her testimony was that she did not notice this name on the shirt of her assailant until after they were together in the elevator, not having so observed it when they were talking in the corridor, presumably at a slightly greater distance from each other. The defendant's own testimony on voir dire was that at the lineup Mrs. Henderson was approximately 40 feet from the place where the other men stood. It is unlikely that the word "Kenneth" upon his shirt was legible at that distance. We cannot conclude from this evidence that the lineup, itself, was so suggestive as to point unfairly to the defendant.

[10]   It is quite clear, however, that the defendant was not represented by counsel at the time of the lineup, was not informed of his right to counsel at that time and did not waive counsel. For this reason the lineup violated his constitutional rights, as declared by the Supreme Court of the United States, and it was error to admit, over objection, the testimony of his

identification therein. *United States v. Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149; *Gilbert v. California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178; *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345, cert. den., 396 U.S. 1024, 90 S. Ct. 599, 24 L. Ed. 2d 518; *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581.

[11]　There was no error, however, in admitting Mrs. Henderson's in-court identification of the defendant. *U.S. v. Wade, supra; Gilbert v. California, supra; State v. Austin,* 276 N.C. 391, 172 S.E. 2d 507. The trial judge found on the voir dire that she first observed the defendant and conversed with him for approximately five minutes, following which she again observed him in a lighted elevator wherein they were in close proximity. He found that Mrs. Henderson had ample opportunity to observe the defendant and did observe him; that the in-court identification was based upon her observations of him other than in the lineup; that the in-court identification was based on factors complete and independent of the lineup identification and was based entirely on what she observed at the time of and before the alleged assault. Upon these findings, the court overruled the motion of the defendant to suppress the evidence of the in-court identification. These findings were fully supported by the evidence on the voir dire.

[12]　Nothing else appearing, the error committed in admitting, over objection, the evidence of Mrs. Henderson's identification of the defendant at the lineup would require a new trial. The record before us discloses, however, that this was harmless error not requiring a new trial. In *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, the Supreme Court of the United States held "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Admission, over objection, of evidence obtained in violation of a right guaranteed the defendant by the Constitution of the United States is harmless error if, but only if, the court can declare that there is no reasonable possibility that such evidence contributed to the conviction. *Chapman v. California, supra; Fahy v. Connecticut,* 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171; *State v. Swaney,* 277 N.C. 602, 178 S.E. 2d 399; *State v. Brinson,* 277 N.C. 286, 295, 177 S.E. 2d 398; *State v. Jacobs,* 277 N.C. 151, 176 S.E. 2d 744. That

is, the error is harmless if, beyond a reasonable doubt, the jury would have reached the same verdict had the incompetent evidence not been admitted.

[13]   In the present case, the in-court identification of the defendant by the prosecuting witness was clear, positive and unequivocal. She testified that for five minutes before getting into the elevator she conversed with the defendant in the corridor of a public building in mid-afternoon and then was with him in a lighted elevator, in close proximity, for one or two additional minutes. His conduct during that period was such as would fix his features in her memory. Minutes later she picked his photograph from a large collection of photographs. Her observation of him an hour or two later in a lineup, when she was 40 feet from him, could have added nothing to her ability to identify him in court and her testimony concerning the lineup added nothing to the persuasiveness of her positive identification of him in the courtroom. Her in-court identification was supported by the testimony of the janitor, who observed her assailant leaving the elevator and walking fast away from it and who testified that the defendant "walks just like" the man he so observed. This evidence was clearly competent. Upon this record we find no basis for reasonable doubt that had there been no testimony whatever concerning the lineup identification, the verdict of the jury would have been the same.

The solicitor, being in the position to offer a positive, unequivocal, in-court identification by the victim of the assault, corroborated by the testimony of another observer, was ill advised in offering evidence of identification at the lineup for it added nothing to the strength of his case. However, the admission of this testimony was harmless error and the conviction will not be set aside since it is inconceivable that a new trial could lead to a different result.

No error.