STATE OF NORTH CAROLINA v. BEAMON FOWLER

No. 7618SC55

(Filed 2 June 1976)

1. Criminal Law § 43— photograph of misdemeanant
    A photograph taken of defendant when he was arrested on an unrelated misdemeanor charge was not illegal.

2. Criminal Law § 66— in-court identification of defendant — no improper pretrial photographic identification
    A robbery and assault victim's out-of-court photographic identification of defendant was not inherently suggestive where the evidence tended to show that the victim was robbed on two occasions two weeks apart, after the first robbery the victim selected photographs of three

suspects, one of which was defendant, following the second robbery defendant was arrested on an unrelated misdemeanor charge and photographed, the recent picture of defendant along with seven others, but not including the other two suspects selected after the first robbery, were exhibited to the victim, and the victim selected defendant's photograph as that of her assailant.

3. **Criminal Law § 66— second in-court identification of defendant — necessity for second voir dire**

It was not error for the trial court to allow a second witness to identify defendant without conducting a *voir dire* and to allow an officer to testify regarding identification of defendant's photograph by the witness, since the court had already conducted a *voir dire* with respect to the procedure used in the selection of the photographs and since the officer's testimony was allowed solely for the purpose of corroboration.

4. **Criminal Law § 86— evidence of prior convictions — representation by counsel in prior trials — time for making determination**

Defendant was not prejudiced where the trial court admitted evidence of defendant's prior convictions without first making a determination that defendant was represented by counsel when he was convicted of the prior offenses, since the court made such a determination after the evidence was allowed.

5. **Criminal Law § 62— polygraph test — results inadmissible for corroboration**

Results of a polygraph test are inadmissible when offered to prove the guilt or innocence of defendant and when offered for the limited purpose of corroboration.

ON *certiorari* to review proceedings before *McConnell, Judge.* Judgment entered 9 May 1975 in Superior Court, GUILFORD County. Heard in the Court of Appeals 4 May 1976.

Defendant was tried on indictments for crime against nature, assault with intent to commit rape, and two counts of armed robbery. The State presented evidence at trial tending to show that the defendant robbed an employee of Flash Market Number 1, in High Point. Susan Davis testified that on 12 December 1974 the defendant entered the Flash Market while she was working at the cash register and pointed a pistol at her and robbed her. She further stated that after defendant took the money he forced her to lie down and take off her pants. Defendant pinched her private parts before leaving, and said, "Thanks, baby, it's been fun."

Susan Davis testified that again on 26 December 1974 defendant entered the Flash Market while she was at work. Defendant forced her into a bathroom at the market and forced her to have oral sex after unsuccessfully attempting sexual in-

tercourse with her. Davis testified that she did not see a gun but that defendant placed a cold heavy object against her temple during the forced oral sex.

A voir dire was held during Susan Davis' testimony. Evidence was presented showing that following the 12 December robbery Susan Davis described the robber and selected photographs of three suspects, one of which was of the defendant. An investigation following the 26 December robbery led to the apprehension of defendant. Recent photographs were made of defendant when he was arrested for an unrelated misdemeanor, and a recent photograph of defendant, along with photographs of several other suspects, was exhibited to Susan Davis. She identified defendant. The trial court made findings that there were no illegal identification procedures, and that the in-court identification was of independent origin.

Iris Boyd, a thirteen year old customer at the Flash Market on 26 December, testified that she saw the defendant come out of the back room of the Market and take the money out of the cash register. Miss Boyd further stated that she saw Susan Davis come out of the back room crying. Miss Boyd's father, Robert Boyd, also testified that he saw a man come out of the back room, but he could not identify the man.

The State presented Phyllis Sipley, an employee of the Flash Market, who testified that she ran inventories of the Market's cash register on 12 December and 26 December and discovered shortages of $65.57 and $102.77 respectively.

Defendant presented evidence of alibi. He stated that on 12 December he was at a turkey shoot and that on 26 December he visited Triangle Billiards, Odell's service station, and the El Conquistadore. Defendant testified that he did not go to the Flash Market on either the 12th or 26th of December.

The jury found defendant guilty as charged of the 12 December armed robbery, and guilty of common law robbery on 26 December 1974. He was found guilty of assault with intent to commit rape, and crime against nature. Defendant appealed from the judgment imposing a prison sentence.

*Attorney General Edmisten, by Special Deputy Attorney General James L. Blackburn, for the State.*

*Thomas F. Kastner, Assistant Public Defender, Eighteenth Judicial District, for the defendant.*

ARNOLD, Judge.

**[2]** After the first robbery on 12 December 1974 Susan Davis selected photographs of three suspects. One of the photographs was of defendant. Following the second robbery on 26 December defendant was arrested on an unrelated misdemeanor charge, and he was photographed at this time. The recent picture of defendant, along with seven others, but not including the other two suspects selected after the first robbery, were exhibited to Davis. She selected defendant's photograph.

Defendant argues that the photographic identification was inherently suggestive and tainted the in-court identification since only one of the three photographs previously selected was included, and because the recent photograph of defendant was taken illegally. We disagree.

**[1]** There is no basis for defendant's contention that the photograph taken of him while he was under arrest for a misdemeanor was illegal. This Court, in *State v. Strickland,* 5 N.C. App. 338, 168 S.E. 2d 697 (1969), reversed on other grounds 276 N.C. 253, 173 S.E. 2d 129 (1970), held that G.S. 114-19, relied upon by defendant in his argument, did not prohibit the use in evidence of photographs made of a defendant charged with a misdemeanor. [In 1973 the General Assembly deleted the first two paragraphs of G.S. 114-19, including the provision relied upon by defendant which relates to photographing misdemeanants, but the same was in effect at the time these crimes occurred.] Strickland, *supra* at 341, held that G.S. 114-19 has no application to the taking and use in evidence of photographs of a defendant charged with a misdemeanor.

**[2]** Following the evidence presented on voir dire the trial court concluded that there were no illegal identification procedures. The court found that the witness had ample opportunity to observe defendant, and that the in-court identification was of independent origin, and based entirely on what the witness saw during the alleged crimes in the Flash Market. The court's findings and conclusions are fully supported by the record. *See State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974) ; *State v. Shutt,* 279 N.C. 689, 185 S.E. 2d 206 (1971) ; *State v. McDonald,* 11 N.C. App. 497, 181 S.E. 2d 744 (1971).

**[3]** There is also no merit in defendant's contention that the court erred in allowing Iris Boyd to identify defendant without

conducting a voir dire, and in allowing Officer Kelly to testify regarding identification of defendant's photograph by Miss Boyd. A voir dire was held concerning the propriety of the pretrial identification procedure during Susan Davis' testimony. The court properly held that the procedure used in the selection of the photographs was not unduly suggestive or conducive to mistaken identification. The evidence from the record clearly indicates that the same eight photographs shown to Davis were shown to Miss Boyd, and that the same procedure was used in exhibiting the photographs to both witnesses. It was not necessary to conduct a second voir dire to determine the propriety of the pretrial photographic procedure. *See State v. Shutt, supra.*

Officer Kelly's testimony that he showed the photographs to Miss Boyd, and that she selected defendant's photograph, was allowed solely to corroborate the testimony of Miss Boyd.

[4] The district attorney cross-examined defendant with respect to defendant's prior convictions. Defendant asserts that the trial court erred in admitting evidence of defendant's prior convictions without first determining whether defendant was represented by counsel when he was convicted of the prior offenses. He cites *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed. 2d 374 (1972), and argues the principle that the use of prior convictions, constitutionally invalid because of a denial of counsel, to impeach the accused's credibility as a witness deprives the accused of due process.

While the trial court did not determine whether defendant's prior convictions were valid and admissible before the testimony was received into evidence, he did, upon hearing the testimony regarding prior convictions, dismiss the jury and proceed to determine whether defendant had been represented by counsel. The court properly determined that at all of defendant's prior convictions he either had benefit of counsel or had waived his right to counsel. The determination by the court that the defendant's prior convictions were constitutionally valid with respect to having benefit of counsel might better have been made before the evidence was allowed. However, any defect was rendered harmless by the ultimate determinations made by the court.

Defendant offered the testimony of R. L. Tuttle that he, Tuttle, administered a polygraph test to defendant, and that no deception was indicated when defendant denied any connection with the robberies. The results of the test were not allowed

534 COURT OF APPEALS [29

into evidence. Defendant moved that the testimony be admitted to corroborate his testimony, and he contends that the court erred in refusing to allow the testimony for the limited purpose of corroboration.

[5] It is established in North Carolina that results of polygraph tests are inadmissible when offered to prove the guilt or innocence of the defendant. *State v. Brunson*, 287 N.C. 436, 215 S.E. 2d 94 (1975); *State v. Foye*, 254 N.C. 704, 120 S.E. 2d 169 (1961); *State v. Pope*, 24 N.C. App. 217, 210 S.E. 2d 267 (1974). We see no logic that compels us to admit the results of a polygraph, when offered to prove guilt or innocence of defendant, merely because they are offered for the limited purpose of corroboration.

Defendant's remaining assignments of error have been reviewed and found to be without merit. It is our view that defendant had a fair trial without prejudicial error.

No error.

Judges BRITT and VAUGHN concur.