STATE OF NORTH CAROLINA v. ELMER LEROY PEOPLES, SR.

No. 8212SC488

(Filed 1 February 1983)

1. Criminal Law § 66.17— one-on-one confrontation—independent origin of in-court identification

A robbery victim's in-court identification of defendant was not rendered incompetent by a prior one-on-one confrontation when police officers inadvertently allowed the victim to view defendant in a hall while waiting for an elevator at the law enforcement center where the victim testified that he was in a lighted room with defendant and was able to observe his uncovered face in close proximity for a total of six to eight minutes, the victim unequivocally stated that he based his identification of defendant upon his observation of him at the time of the robbery, and the trial judge found that the witness had ample opportunity to view the defendant at the time of the crime and that the confrontation at the law enforcement center was unintentional.

2. Criminal Law § 87; Witnesses § 7.1— witness previously hypnotized—competency of testimony

The trial court did not err in the admission of testimony by a witness who had previously been hypnotized by a police officer where defendant failed to show that the witness was rendered untrustworthy as a result of being hypnotized, the fact that the witness was hypnotized prior to trial being a matter bearing upon the credibility rather than the competency of the witness.

3. Criminal Law § 45; Witnesses § 1— inadmissibility of videotape of hypnosis session

The trial court erred in admitting into evidence and permitting the jury to view a videotape of a hypnosis session of a State's witness where the State failed to demonstrate to the court the scientific acceptance of the reliability

and accuracy of hypnosis. However, the admission of such evidence did not constitute prejudicial error in light of the overwhelming competent evidence of defendant's guilt of the crime charged. G.S. 8-97.

**4. Robbery § 4.1— ownership of property taken in robbery—no fatal variance**

There was no fatal variance between an armed robbery indictment alleging a corporate ownership of silver taken in the robbery and evidence which failed to establish such corporate ownership where the evidence negated the idea that defendant was taking his own property.

APPEAL by defendant from *Farmer, Judge.* Judgment dated 17 December 1981 entered in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 15 November 1982.

Defendant was charged in bills of indictment with armed robbery and conspiracy to commit armed robbery.

State's evidence tended to show that in April or May of 1980 defendant telephoned Bruce Miller inquiring if he wanted to make some "easy money." Defendant later discussed with Miller the robbery of Borden Chemical Plant, which kept on hand quantities of silver used in its manufacture of formaldehyde. On 4 May 1980 defendant set up a meeting between himself, Miller and Bob Peele to discuss further the robbery but he never showed up. Defendant later contacted Miller and arranged another meeting at his house on 25 May. The two men met and defendant discussed in great detail the robbery of silver from the plant. That night defendant, Miller and Peele arrived at Borden Chemical Plant shortly before the change of the midnight shift. Miller entered the office of Steven Reams, shift supervisor, and forced him at gunpoint to lead the men to the door of a room containing granulated silver stored in 10-inch high black buckets. They broke open the door with crowbars, setting off an alarm, and began loading up defendant's car with buckets of silver. The next day the men sold three of the black buckets of silver to a gold and silver dealer in Fayetteville for approximately $16,000.00.

Defendant presented no evidence. He was found guilty as charged and received a prison term of seven to ten years. Defendant appeals.

*Attorney General Edmisten, by Special Deputy Attorney General H. A. Cole, Jr. and Assistant Attorney General Fred R. Gamin, for the State.*

*Assistant Public Defender James R. Parish for defendant-appellant.*

ARNOLD, Judge.

[1]  Defendant first assigns error to the denial of his motion to suppress the in-court identification of him by Borden's nightshift supervisor, Mr. Steven Reams. He contends that the identification was tainted by a prior one-on-one confrontation between the witness and the defendant. Confrontation occurred on the day Miller was brought to the police station for a photographic line-up. After identifying the defendant from a set of six photographs, Reams again pointed him out as the robber when police officers inadvertently allowed the witness to view the defendant in a hall while waiting for an elevator. Reams had not been told that defendant would be present at the Law Enforcement Center. Although such a single confrontation for identification purposes is widely condemned, we do not find that this unplanned exhibition was violative of due process standards when viewed under the totality of the circumstances. *See, State v. Dawson,* 302 N.C. 581, 276 S.E. 2d 348 (1981); *State v. Thomas,* 292 N.C. 527, 234 S.E. 2d 615 (1977). On *voir dire* Reams testified that on the night of the robbery he was in a lighted room with the defendant and was able to observe his uncovered face in close proximity for a total of six to eight minutes. He unequivocably stated that he based his identification of the defendant upon his observation of him made upon the night of the robbery. The trial judge found that the witness had ample opportunity to view the defendant at the time of the crime and that the confrontation at the Law Enforcement Center was unintentional. Since these facts are supported by the evidence, the court's holding that the in-court identification was competent will not be disturbed upon appeal. *State v. Thomas, supra.* This assignment of error is without merit.

[2]  In his next assignment of error defendant argues that the trial judge erred in allowing into evidence (1) testimony of Bruce Miller, who had been previously hypnotized by police officers, and (2) a videotape of the hypnosis session.

The trial judge entered the following order denying defendant's motion to suppress Miller's testimony:

## FINDINGS OF FACT

(1) Bruce C. Miller was hypnotized on October 8, 1981 by S. C. Sessoms, Jr., a Detective with the Fayetteville Police Department, in the Law Enforcement Center in Fayetteville, North Carolina, with Officer Pulliam, Detective Bruce Daws and Captain Hart in the room.

(2) Prior to Bruce C. Miller being hypnotized, Detective Sessoms stated that the purpose of the hypnotic session was to enhance the memory of Bruce C. Miller.

(3) The hypnotic session was video-taped.

(4) Prior to this trial, the attorneys for the defendants were informed of the hypnotic session and given access to the video-tape by the State.

(5) Prior to October 8, 1981, Bruce C. Miller had been arrested and made a statement concerning the crimes for which the defendants are being tried.

(6) On December 9, 1981, the court along with the attorneys for the State and the defendants, viewed the video-tape; and the hypnotist inquired of Bruce C. Miller what he did on May 25 and 26, 1980, who he was with and a few other questions.

(7) No evidence was offered by the State or the defendants in this hearing.

## CONCLUSIONS OF LAW

(1) Bruce C. Miller gave answers under hypnosis as a result of his voluntary thought process and not as a result of any suggestion by the hypnotist.

(2) The hypnotist was not suggestive to Bruce C. Miller.

(3) The hypnotic session was not improperly conducted such as to render the testimony of Bruce C. Miller inadmissable.

(4) The totality of circumstances reveals that the hypnotic session was not unnecessarily suggestive as to offend fundamental standards of decency, fairness and justice.

(5) Permitting Bruce C. Miller to testify after being hypnotized would not violate the defendants constitutional rights.

(6) The motion by the defendants should be denied.

IT IS ORDERED that the motion by the defendants be and it is hereby denied.

Prior to trial defendant's attorney was allowed to view the videotape of the hypnosis session. At trial he was given ample opportunity to cross-examine both the witness Miller and the detective who conducted the hypnosis. The jury was fully advised that this witness had been previously hypnotized. Defendant does not contend on appeal that the hypnotist in any way suggested ideas to Miller or influenced his memory of the events relating to the crime.

Inasmuch as defendant has failed to show in any respect that the witness was rendered untrustworthy as a result of his being hypnotized, we find no error in the trial judge's denial of defendant's motion to suppress Miller's testimony on this ground. The fact that the witness was hypnotized prior to trial is a matter bearing upon the credibility of his testimony and not its competency. *State v. McQueen*, 295 N.C. 96, 244 S.E. 2d 414 (1978). The weight to be given evidence presented by a witness, whose memory was considered to be in need of refreshing by an outside source, was a matter for the jury's consideration.

[3] However, we do not approve the admission into evidence and jury view of the videotape of the hypnosis session. Under G.S. 8-97 videotapes now may be introduced as substantive evidence upon laying a proper foundation. However, the particular nature of the video portrayal on this tape also placed upon the State the burden to meet other "applicable evidentiary requirements." G.S. 8-97. Inasmuch as no North Carolina decision has resolved the legal issues surrounding videotapes of hypnotic sessions, it was incumbent upon the prosecution to present the trial judge with a sufficient basis to constitute this tape as competent evidence in the courtrooms of this state. *Compare, Wood v. Stevens & Co.,*

297 N.C. 636, 256 S.E. 2d 692 (1979). We find the State failed to meet its burden.

The standard for the admission of new kinds of scientific evidence and procedures was set out in *State v. Temple*, 302 N.C. 1, 273 S.E. 2d 273 (1981) as follows:

> "This court is of the opinion, that we should favor the adoption of scientific methods of crime detection, where the demonstrated accuracy and reliability has become established and recognized. Justice is truth in action, and any instrumentality, which aids justice in the ascertainment of truth, should be embraced without delay."

*Id.* at 12, 273 S.E. 2d at 280, quoting from *State v. Powell*, 264 N.C. 73, 74, 140 S.E. 2d 705, 706 (1965); *see also, State v. Steele*, 27 N.C. App. 496, 219 S.E. 2d 540 (1975) [applying the test set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) for admissibility of polygraph evidence].

Since the record before us in devoid of any effort to demonstrate to the court the scientific acceptance of the reliability and accuracy of hypnosis, the State did not establish the competency of the videotape and we need not decide whether the prosecution met the above test for the admission of this type of evidence. However, we note that the issue of the admissibility of hypnotically induced testimony in a criminal trial has engendered significant controversy in the legal community and the overwhelming majority of courts have excluded out-of-court statements and tape-recorded testimony from hypnosis sessions when offered as substantive evidence. *See e.g., Greenfield v. Robinson*, 413 F. Supp. 1113 (W.D. Va. 1976); *Jones v. State*, 542 P. 2d 1316 (Okla. Crim. App. 1975); *State v. Jorgensen*, 8 Or. App. 1, 492 P. 2d 312 (1971); *State v. Harris*, 241 Or. 224, 405 P. 2d 492 (1965); *State v. White*, 60 Wash. 2d 551, 374 P. 2d 942 (1962), *cert. denied*, 375 U.S. 883, 84 S.Ct. 154, 11 L.Ed. 2d 113 (1963); Note, *Hypnotically-Induced Testimony Held Inadmissible in Criminal Proceeding*, 7 Wm. Mitchell L. Rev. 264 (1981); Pelanda, 14 Akron Law Review 609 (1981); Annot., 92 A.L.R. 3d 442 (1979). As pointed out in *State v. McQueen*, 295 N.C. 96, 244 S.E. 2d 414 (1978), the admission of a videotape containing the extrajudicial statements of a person under hypnosis is entirely different from testimony of a previously hypnotized witness about his present

in-court recollection of past events. Nor do we consider a tape recording of a hypnosis session in any way admissible as corroboration of the testimony of a witness stating his present recall of prior incidents. *Cf., State v. Fowler*, 29 N.C. App. 529, 225 S.E. 2d 110 (1976) (results of polygraph not admissible for corroborative purposes).

Although we do find the admission of the videotape to be error, we do not hold the error to be prejudicial in light of the overwhelming presence of competent evidence centering on defendant's guilt of the crime with which he was convicted. *See, State v. Knight*, 282 N.C. 220, 192 S.E. 2d 283 (1972). Bruce Miller testified as to defendant's planning and commission of the crime. The plant supervisor positively identified the defendant as one of the men that he witnessed robbing the plant of buckets of silver. Defendant was also identified as a seller of three buckets of granulated silver shortly after the robbery. Under the facts of this case we find it to be clear that the improper admission into evidence of the videotape was harmless error.

[4] In his final assignment of error defendant contends that the trial judge erred in failing to dismiss the charge of armed robbery at the close of the evidence. He argues there existed a fatal variance between the indictment which alleged ownership of the silver in a corporation known as Borden Chemical and the proof at trial which failed to establish this corporate ownership. We do not agree. "An indictment for robbery will not fail if the description of the property is sufficient to show it to be the subject of the robbery and negates the idea that the accused was taking his own property." *State v. Spillars*, 280 N.C. 341, 345, 185 S.E. 2d 881, 884 (1972). Steve Reams, the shift supervisor at Borden Chemical, testified that defendant took buckets of silver at gunpoint from a locked room located on the premises of the plant and that the substance taken was an integral ingredient used by the plant in its manufacturing process. We find this evidence sufficient to overcome defendant's motion to dismiss.

We hold that defendant received a fair trial without prejudicial error.

No error.

Judges HILL and JOHNSON concur.