Error.

---

### STATE v. JOHN FLOWERS.

(Filed 1 November, 1922.)

**Criminal Law—Prosecution in Good Faith—Evidence—Appeal and Error —Prejudice—Reversible Error.**

In an action for embezzlement it was competent to ask the prosecutor, on cross-examination, if he was acting therein in behalf of another in attempting to obtain from the defendant a deed to land involved in a civil action, upon the question of the prosecutor's good faith, etc., and a refusal to allow such examination constitutes reversible error.

CLARK, C. J., dissenting.

APPEAL by defendant from *Cranmer, J.*, at July Term, 1922, of DUPLIN.

Criminal prosecution, tried upon an indictment charging the defendant with embezzling $350 and a Studebaker automobile on 27 February, 1918, alleged to be the property of one Willie Waters, denominated in the record as "nominal prosecutor."

The State's evidence, if believed, showed that the defendant Flowers, in 1918, sold to the prosecuting witness, Willie Waters, an automobile for $475. Waters paid $350 cash and gave a note and mortgage on the car for $125. A few days later Waters, being a shoemaker, and finding that he could not operate the car, applied to the defendant to take it back. The defendant agreed to do so upon Waters appointing him, the defendant, his agent to sell the car. The oral agreement was that the proceeds of the sale of the car should first be applied to the payment of the $125 note, then the remainder of it, to the extent of $350 paid in cash by Waters, was to be returned to Waters.

This alleged agreement was denied by the defendant, and he offered in evidence the following written contract, which Waters admitted he signed at the time the machine was returned to the defendant:

"This paper made this 4 March, 1918, by Willie Waters of Duplin County and State of North Carolina, party of the first part, and John Flowers of Duplin County and State of North Carolina, of the second part:

"Witnesseth, that in consideration of the party of the second part releasing the party of the first part of notes held on an automobile which the party of the second part sold to the party of the first, the party of the first part does hereby transfer the said automobile back to the party of the second part, and the party of the second part does this day release party of the first part of said notes.

"Witness my hand and seal the day and date first above written.

"Witness: JAMES POWERS.                    W. S. WATERS.    [SEAL.]"

The defendant then took the car and returned it to one J. E. Clayton, from whom he had purchased it, and who held a purchase-money mortgage upon the automobile, amounting to $400, taking from Clayton in payment of the same his canceled notes and mortgage.

Under these circumstances, and after the lapse of nearly four years, the defendant was convicted of having embezzled the automobile and the sum of $350, and was sentenced to jail for a period of two years, to be assigned to work on the public roads. Defendant appealed, assigning errors.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Ward & Ward and H. D. Williams for defendant.*

44—184

STACY, J., after stating the case: At the trial, defendant sought to show that this prosecution was instituted at the instance of one Eugene Boney, against whom the defendant had filed suit in the early part of 1920, to recover from him a valuable tract of land.

As bearing upon the weight and credibility of the testimony of the prosecuting witness, he was asked the following questions on cross-examination:

"Q. Is not Mr. Boney furnishing you with money to prosecute this case?"

Objection by the State sustained; defendant excepted. Defendant expected the witness to answer in the affirmative.

"Q. Has Mr. Boney employed any of counsel in this case?"

Objection by the State sustained; defendant excepted. There were four lawyers appearing with the solicitor for the State, and defendant expected an affirmative answer.

"Q. At the time prosecution started, did you not know that Eugene Boney had a lawsuit with defendant about a piece of land?"

Objection by the State sustained; defendant excepted. Defendant expected an affirmative answer.

Defendant further sought to show on cross-examination of this witness that, upon the preliminary hearing, defendant was discharged for want of probable cause, and Waters was taxed with the costs; that immediately after the preliminary trial, counsel for defendant was assaulted by Eugene Boney, with a knife, because his name had been mentioned in the trial. This evidence was excluded upon objection, and defendant excepted.

The defendant further sought to show, by his own evidence, that at the time of his arrest the officer presented to him for execution a deed from himself and wife to Eugene Boney for the land in controversy in the civil action, stating that he had been instructed not to serve the warrant if the deed were executed. This evidence was excluded.

The witness was not permitted to answer the following questions:

"Q. At the preliminary hearing of this matter, Esquire Powers discharged you and taxed Waters with the costs?"

Objection by the State sustained; defendant excepted. Witness would have answered "Yes."

"Q. Did Mr. Eugene Boney assault Mr. Ward, your counsel, after the preliminary trial, and violently curse him for having mentioned his name?"

Objection by the State sustained; defendant excepted. Witness would have answered "Yes."

"Q. Did Eugene Boney talk to you here at term of court at which this bill was found?"

Objection by the State sustained; defendant excepted. Witness would have answered "Yes; Boney said they were going to indict me and if I would sign the deed to him there would be no more of it. I didn't sign the deed, and I was arrested on a *capias* under this bill of indictment."

There was other evidence offered and excluded, tending to show that Boney was the real prosecutor in the case, and that Waters was acting in his behalf and at his request. While some of this evidence may have been excluded, and rightly so, by reason of the form and manner in which it was presented, yet, in the main, it was pertinent and clearly competent as bearing upon the good faith of the prosecution and the weight and credibility of the evidence of the nominal prosecutor, Willie Waters. It should be observed that Waters' testimony, upon whose evidence alone the defendant was convicted, is in direct conflict with the terms of the written bill of sale which he signed on 4 March, 1918.

The defendant was entitled to have the jury consider the real facts in the case; and, if the above excluded testimony be worthy of belief, there can be no doubt as to who was the real prosecutor. This is so plain "that he may run that readeth it." Habakkuk, 2 :2.

Again, there is no evidence on the record tending to show any embezzlement of the $350. This sum was paid to the defendant by the prosecuting witness at the time he purchased the car, and in no view of the evidence could he have been convicted on this count.

For the error, as indicated, there must be a new trial, or a *venire de novo.*

New trial.

CLARK, C. J., dissenting: The uncontradicted evidence was that the defendant, in October, 1917, bought the car in question from J. E. Clayton for $600, paying $100 cash and giving his notes for the balance. In 1918 the defendant sold the automobile to Willie Waters, the prosecuting witness, for $475. Waters paid $350 cash, and gave a note and mortgage on the car for $125. A few days afterwards, Waters being a shoemaker and finding that he could not operate the car, applied to the defendant to take it back. This he agreed to do upon Waters appointing him, the defendant, his agent to sell the car. The agreement was that the proceeds of the sale of the car by the defendant should first be applied to the payment of the $125 note, then the remainder of it not to exceed $350, which was the amount of the cash paid by Waters, was to be returned to him.

As soon as the defendant had secured possession of the car under this agreement, he returned it to Clayton, who took the car for the balance due him upon the notes. Clayton turned over to Flowers $400 in notes

of Flowers, marking them paid. Clayton testified that at this time the car was worth $300. The defendant at no time after the settlement with Clayton accounted for any part of the proceeds of the sale.

In order to convict the defendant of embezzlement, four facts must be established: (1) That the accused was the agent of the person alleged, and that by the terms of his employment he was charged with receiving the money or property of his principal; (2) that he did in fact receive such money; (3) that he received it in the course of his employment; and (4) that he, knowing that it was not his own, converted it to his own use. All of the elements of the crime, as shown upon the evidence, are set out in this case and justified the verdict. *S. v. Gulledge,* 173 N. C., 746; *S. v. Long,* 143 N. C., 674; *S. v. Connor,* 142 N. C., 708; *S. v. Summers,* 141 N. C., 843; *S. v. Blackley,* 138 N. C., 620.

The written agreement signed by Waters that he released and transferred back to Flowers the automobile merely placed the title back in Flowers to make sale of the same. The testimony of Waters that Flowers, as agent, was to sell the car and bring him the proceeds after paying the $125 he owed Flowers was a valid verbal agreement.

The written part of the contract was not in contradiction of the verbal conditions on which Flowers was to dispose of the property and was competent. *Nissen v. Mining Co.,* 104 N. C., 309, and numerous citations thereto in Anno. Ed. Otherwise, the written agreement would have been a gift by Waters of the property without consideration, when the only reasonable construction is, as Waters testified, that it was to be sold by Flowers and accounted for. Flowers not having done this, was guilty of embezzlement.

The defendant further contended that because of the condition that the proceeds of the car, when sold by Flowers, should be applied to the payment of the $125 note due by Waters, then the remainder of it to the extent of $350 cash, which had been paid by Waters, was to be returned to Waters, and all above should be divided equally between them (but there was nothing in excess) amounted to a joint ownership, and hence the appropriation of the entire proceeds by Flowers was not an embezzlement.

This subject, however, was fully discussed and decided in *S. v. Blackley,* 138 N. C., 620, which held, upon these identical facts, that in such case the failure of the agent who converted the property to his own use and failed to pay his part of the proceeds of the sale to the owner was an act of embezzlement. Such contract as this did not constitute the defendant and Flowers partners, but the defendant was the agent of the prosecutor and by the terms of his employment, having received property of his principal in the course of his employment, and knowing it was not his own, converted it to his own use, he was guilty of embezzlement.

In *S. v. Blackley, supra,* the Court affirmed the following charge by the judge: "If the jury shall be satisfied from the evidence that Blackley was to sell the horses and mules ·for McAdow and pay the expenses, and then pay to McAdow the cost price of the horses and mules before any division of profits, he had no right to mix the cost price of the horses and mules with his own money," and the Court sustained the conviction.

On the trial the defendant asked the prosecuting witness several questions in an attempt to show that one Eugene Boney was hostile to the defendant, and had instigated this proceeding. These questions were entirely irrelevant and were properly excluded. They did not tend to impeach the character of the prosecuting witness, but were merely to show a motive, which was unnecessary, for he was a prosecutor.

Eugene Boney was in no way connected with any of the dealings as to the automobile or its disposal in any way, and was not a witness on the trial. It was an attempt to divert attention from the question at issue, which was the embezzlement by the defendant of the property of Waters, and the only effect of the cross-examination of the prosecuting witness, if allowed, would have been to make an issue as to the relationship between Eugene Boney (who was in no wise connected with the matter) and the prosecuting witness. It needs no citation of authorities to sustain the ruling of the judge excluding these questions as irrelevant.

Though the defendant went upon the stand himself and put on witnesses, he did not deny the essential elements of the offense charged. He contents himself with the attempt to prove by the cross-examination of witnesses that Boney had *animus* against him, and had caused Waters to bring this prosecution, but there is no contradiction that he took the machine back from Waters; Clayton testified that defendant resold it to him for $400, and defendant does not deny he has paid Waters no part of the proceeds of the resale of the property, although Waters had it only a few days and had paid the defendant for it $475 ($350 in cash). He rests his case upon the purely irrelevant allegation that, as he claims, Waters was prompted to this prosecution by an enemy of his.

The cross-examination excluded did not tend to show bias of Waters, who was the prosecuting witness, but merely to impeach Boney, who was not a witness at all, and was therefore irrelevant.

As Waters received nothing in return for the machine for which the defendant admits Waters had paid him $350 in money and given him a note for $125, the indictment charges in two counts the embezzlement of the machine and of $350 in cash. As the verdict is a general one, it is immaterial whether the embezzlement was of the machine or of any part of the value thereof.

It is noticeable that the defendant's brief does not deny these facts, but it is taken up entirely with the charge of bad feeling by Boney (who had no connection with this matter for which the defendant is indicted), and the allegation that Boney threatened to assault defendant's counsel. The real issue—the embezzlement charge—and the failure of the defendant to account to Waters for any part of the proceeds of the machine (which he does not deny Clayton paid him) is not controverted or even mentioned in defendant's brief.