STATE OF NORTH CAROLINA v. ABDUL MALIK MUTAKBBIC

No. 547A84

(Filed 2 July 1986)

1. **Rape and Allied Offenses § 19— indecent liberties with child—testimony that victim's grandmother bore animosity to defendant—not admitted**

    The trial court did not err in the prosecution of defendant for first degree rape and taking indecent liberties with his niece by marriage by refusing to

State v. Mutakbbic

admit testimony showing that the victim's grandmother, with whom she lived, bore animosity for defendant and testimony that defendant believed the grandmother coerced the victim to accuse him of rape. The grandmother was not the prosecuting witness and there was no competent evidence that she instigated the prosecution; all of the evidence showed that the prosecution was initiated after a social worker reported the matter to the district attorney following her own independent investigation.

2. Criminal Law §§ 102.6; 128.1— the State's closing argument—facts not in evidence—mistrial denied—no error

The trial court did not err in denying defendant's motion for a mistrial following the State's closing argument in a prosecution for rape and taking indecent liberties where the prosecution argued that the victim's grandmother first reported the sexual assaults on 22 July, the social worker's testimony had been contrary to that argument, but the victim's grandmother, called by defendant, gave testimony which tended to support the argument. The prosecution may properly argue facts in evidence or reasonable inferences therefrom regardless of whether the State or defendant introduced those facts, defendant failed to register an objection during the argument, and rulings on mistrial motions are for the trial court's discretion. N.C.G.S. § 7A-544 (1985 Cum. Supp.).

3. Criminal Law § 101.4— motion to reopen evidence during deliberations—denied—no error

The trial court did not err in a prosecution for rape and taking indecent liberties with a child by denying defendant's motion to reopen the evidence during jury deliberations to permit introduction of the original neglect report. The matter was within the trial court's discretion, there was ample support for his decision in that no effort was made by defendant during trial to have the report introduced even though defendant knew of its existence, and the evidentiary conflict defendant sought to resolve by introducing the document was relatively insignificant.

4. Criminal Law § 101.4— motion to inquire into which document the jury was inquiring about—denied—no error

The trial court did not err in a prosecution for rape and taking indecent liberties with a child by denying defendant's motion to inquire of the jury which document not in evidence it had inquired about; assuming the document was a neglected child report to social services, the document was relatively insignificant and was not in evidence.

5. Criminal Law § 126— motion to poll jury to determine whether they had considered particular evidence—denied

The trial court did not err in a prosecution for rape and taking indecent liberties with a child by denying defendant's motion to poll the jurors after the verdict to determine whether they had considered whether the victim's grandmother had made a neglected child report to social services and whether the report contained allegations of possible child abuse. N.C.G.S. § 15A-1240(a).

APPEAL by defendant from judgments by *Ellis (B. Craig), J.,* at the 11 June 1984 Criminal Session of WAKE County Superior

Court, sentencing him to two consecutive life terms, a third concurrent life term, and three concurrent ten-year terms, upon his convictions of three counts of first degree rape and three counts of taking indecent liberties with a child. This Court allowed defendant's petition to bypass the North Carolina Court of Appeals as to his appeals from the indecent liberties convictions.

*Lacy H. Thornburg, Attorney General, by James E. Magner, Jr., Assistant Attorney General, for the state.*

*William G. Ransdell, Jr. for defendant appellant.*

EXUM, Justice.

The victim in this case was an eight-year-old child in July 1983, the time of the offenses alleged in the indictments. She lived with her maternal grandmother, Betty Veal; but for one week during July 1983 Veal arranged for her to stay with the child's mother, Jewel Upchurch. Upchurch lived in a rooming house two to four blocks from the house where defendant lived with his wife Brenda, who was Upchurch's sister. Defendant is thus the victim's uncle by marriage.

Defendant's appeal presents questions relating first to the admissibility of evidence tending to show animosity toward defendant by Veal, who was not a state's witness but who reported the incidents out of which the prosecutions arose to the Social Services Department, and second to various rulings of the trial court concerning the state's closing jury argument and the jury's possible consideration of a Social Services Department report reduced to writing but not offered into evidence in the case. We find no error in the trial.

I.

The child testified that on several occasions during the week she spent with her mother in the summer of 1983, when defendant was alone with her after they had taken defendant's wife to work, defendant would remove their clothes and force her to engage in vaginal and anal intercourse. He occasionally gave her money in return. The child said she told her grandmother Veal about these incidents when she returned to Veal's home. She also related the incidents to Frederica McKeithan of the Wake County

Department of Social Services, and to Dr. Jerry Bernstein, both of whom testified for the state.

Frederica McKeithan, a child protective services investigator with the Wake County Department of Social Services, testified she first became involved with this case when a neglect report received by a colleague on 22 July 1983 was forwarded to her. McKeithan first spoke with Veal on 4 August 1983 by telephone regarding that report. During this conversation Veal mentioned to McKeithan possible sexual molestation of her granddaughter by defendant. An appointment for McKeithan to interview the child on 8 August was then made. According to McKeithan, no references to sexual molestation appeared in the 22 July 1983 report. McKeithan interviewed the child on 8 August 1983 to investigate the reports of abuse and neglect. McKeithan testified that it was a "long interview" in which she had to spend a lot of time with the child before the child "would start telling me these things that she evidently was not real open about." Finally, the child told her about having had vaginal and anal sexual intercourse with her uncle, Abdul Mutakbbic. During her interview McKeithan was able to establish the dates on which these events occurred as being 17, 18 and 19 July 1983, the dates eventually set out in the bills of indictment. Based upon what the child told her, McKeithan made an appointment for the child to be examined by Dr. Jerry Bernstein, a Raleigh pediatrician and child medical examiner. Dr. Bernstein's 10 August 1983 examination of the child revealed a much larger vaginal opening than is normal for the child's age. Armed with Dr. Bernstein's findings and the information gained in her interviews with the child, McKeithan reported the matter to the district attorney's office because, in her words, "that is the law."

Defendant and various family members and friends testified they had been at defendant's home over the entire period when the victim claims the sexual assaults took place. They all saw the girl only once that week for a short time when she was looking for her mother. On cross-examination defendant, thirty years old at trial, admitted he had pleaded guilty in March 1974 to attempted rape and had been convicted in June 1981 in Wake County District Court of assault on his wife Brenda.

Defendant called as his witness Veal, whose testimony substantially corroborated the victim's. Veal, on direct examination by defendant, testified that when she brought the child back to her home from Upchurch's house in July 1983, the child behaved strangely but would not say what was troubling her. Finally after a "couple of days," while the two were watching television in the evening, the following conversation between them occurred:

[S]he [the child] said, 'Grandma, I love you.' I said, '. . . do you have anything you want to tell me?' She said, 'No'; I said, 'O.K., we are going to sit here and look at television and if you have anything you want to tell me, go ahead, I'm listening.' So she set there about five minutes, and so she said, 'If I tell you, can you keep a secret?' I said, 'Yes, I can keep a secret.' I said, 'What is the secret?' She said, 'I'm afraid to tell.' I said, 'Well, you don't have to be afraid to tell me.' I said, 'You can tell me.' So then she told me she said, 'My Mama sent me down to Brenda's.' I said, 'I told her not to send you down there.' She said, 'Well, she sent me down there.' And she hesitated, and she said, 'Abdul did something.' I said, 'What did he do?' And she said, 'I'm scared to tell.' I said, 'Well, you don't have to be scared to tell me.' And she told me, said, 'He did like that'; I said, 'Did what like that?' And she said, 'He put his privates in me.'

Veal said she called McKeithan "the next day." Regarding what she told McKeithan, Veal testified as follows:

Q. O.K., and when you talked to Ms. McKeithan, did you talk about Abdul?

A. Talk about Abdul?

Q. Yes, did you mention Abdul to Ms. McKeithan?

A. I'm not certain. I know I told her what [the child] had said. I might have. I had to explain to her what [the child] said to me in order for her to understand what I was getting at.

Q. So you did tell Ms. McKeithan that [the child] had told you Abdul had put his privates in her?

A. Like I said, I'm not certain. I might have. I had to explain to her so she would come out and help me with the problem.

When asked if she had ever had an "argument, disagreement, a falling out" with defendant, her reply and the succeeding colloquy was as follows:

I wouldn't say exactly a falling out. I had some trouble with him about beating my daughter up in my house and I asked him whenever he decided to do it, to do it at his own house, not mine.

Q. Did you ever tell him you would get him?

A. Get him about what?

Q. About an argument you all had at a birthday party at his house?

A. No.

During the presentation of defendant's evidence he sought unsuccessfully to offer testimony from Veal's daughters, Upchurch and Brenda Mutakbbic, regarding certain threats Veal had made against them and against defendant. He also sought unsuccessfully to testify himself about his beliefs and opinions concerning Veal's attitude toward him and his belief that Veal had encouraged the child to testify against him. Defendant brings forward an assignment of error directed to the trial court's rulings that this evidence was inadmissible.

After the state's closing argument defendant moved for a mistrial on the ground portions of the argument were not supported by the evidence. The motion was denied. During jury deliberation, the jurors inquired of the court whether it is "permissible to receive a copy of [a] document referred to in the testimony so we might read information originated on it, etc.?" The court after a bench conference with counsel for the state and defendant informed the jurors that only documents introduced into evidence could be viewed by them. It agreed to allow the jury to see the only document offered into evidence the following morning after the evening recess. The following morning defendant moved the court to inquire of the jury what document not in evidence it had inquired about the previous afternoon. The motion

was denied. Thereafter while the jury was deliberating defendant moved to reopen the evidence in order that the 22 July 1983 report to the Social Services Department might be offered into evidence and the jury permitted to see it. The motion was denied. Finally after the verdict defendant moved that the jurors be polled as to whether in reaching a verdict they considered that the 22 July 1983 report to the Social Services Department was made by Veal and, if so, that the report contained information from Veal that defendant had molested the child. The motion was denied. Defendant brings forward assignments of error directed to each of the foregoing rulings of the trial court.

II.

[1] Defendant first argues the trial court committed reversible error in refusing to admit the testimony of Brenda Mutakbbic and Upchurch tending to show their mother Veal bore animosity for defendant and defendant's testimony that he believed Veal coerced her granddaughter to accuse him of rape.

Judge Ellis sustained the state's objections to Brenda Mutakbbic's proffered testimony that Veal had threatened "to get [defendant] one way or the other" when the two were present in Mrs. Mutakbbic's hospital room in 1981, and had told defendant at Veal's son's birthday party at defendant's home on 23 April 1983, "I'm still going to get you." On cross-examination, Mrs. Mutakbbic admitted that Veal's statements followed a 1981 incident when she was hospitalized as a result of a beating defendant inflicted and for which he was convicted of assault. Judge Ellis found these alleged threats irrelevant and too remote, and declined to admit that testimony. Judge Ellis also excluded Upchurch's proffered testimony that in late 1982 at her cousin's trailer Veal threatened to kill defendant and on other occasions Veal said she did not like defendant.

Judge Ellis permitted defendant to testify on direct examination to the above-mentioned threats by his mother-in-law but refused to allow defendant to testify before the jury as follows:

Q. Do you know of any reason why she [the prosecuting witness] would tell?

A. [She] would not tell this if someone would not be tell-
ing her to do this and I do believe that Ms. Betty told her to
say this.

Q. Tell us why you believe Ms. Betty told her to do this?

A. This is a way of getting me out of the way.

. . . .

Q. Well, what has Ms. Betty ever said to you to cause
you to think she might do this to you?

A. 'Cause she had constantly said she would get me back
no matter what it takes; she would break me no matter what
it cost, she would do it.

Q. How many times has she told you that?

A. She's told me this when we was living in — with John-
ny Veal, her first husband; Johnny Veal told me, "Abdul."
Well, anyway, Ms. Betty have told me on many occasions in
Durham, here in Raleigh, and Wakefield Apartments, over to
her home, to Lillian, to, I can't call her name that well, it was
relatives, you know, and also I was over to Ms. Ella McLean,
Brenda's grandmother, and she made threats over there
about getting rid of me.

Defendant relies first on the principle that a criminal defend-
ant may offer evidence of declarations made by the prosecuting
witness which tend to show animosity or bias toward defendant.
*State v. Wilson,* 269 N.C. 297, 152 S.E. 2d 223 (1967) (incest prose-
cution; error to exclude evidence of declaration of defendant's
daughter, the prosecuting witness, that her father was "too tight
on her" and she could "have a lot more fun if her daddy wasn't at
home"). He also relies on *State v. Flowers,* 184 N.C. 688, 114 S.E.
289 (1922) (an embezzlement prosecution) for the principle that a
criminal defendant may offer evidence that a prosecution against
him was actually instigated by someone other than the prose-
cuting witness because of the instigator's personal bias against
the defendant.

Neither of these cases controls us here. Veal was not the
prosecuting witness nor is there any competent evidence, prof-
fered or admitted, that Veal instigated the prosecution. Defend-

ant's "belief" or surmise that she did is not competent. Witnesses must testify to facts, not beliefs or surmises. All the competent evidence both for the state and defendant demonstrates, in fact, that Veal did *not* instigate the prosecution. The child first volunteered the information about the sexual assaults to Veal. Veal, rather than reporting the incidents to law enforcement authorities in order to begin a criminal prosecution, contacted a social worker, McKeithan, to obtain assistance for her granddaughter. Subsequently, McKeithan conducted an independent investigation. McKeithan's independent investigation, not anything Veal reported, caused McKeithan to report the matter to the district attorney who, in turn, made a decision to prosecute.

Judge Ellis properly excluded evidence purporting to show Veal's bias against defendant because Veal neither testified for the state nor instigated defendant's prosecution. The proffered evidence thus was irrelevant. He also properly excluded defendant's "belief" about Veal's motives and actions because this constituted mere speculation and conjecture, not facts.

### III.

Defendant's three remaining arguments all relate to the 22 July 1983 report made to the Department of Social Services. Social worker McKeithan testified a colleague in her office received this report. She refused to divulge the reporter's name or the contents of that report or other reports based on her subsequent investigations.[1] She relied on N.C.G.S. § 7A-544, which reads in pertinent part as follows: "All information received by the Department of Social Services shall be held in strictest confidence by the Department." McKeithan did say the 22 July 1983 report did not mention sexual abuse; she first learned of that possibility in her telephone conversation with Veal on 4 August 1983. Veal, when called by defendant, testified that although "not certain,"

---

1. The trial court, in order to preserve Ms. McKeithan's report for the appeal, sealed a copy of the report and had it delivered to this Court with the record on appeal.

she "might have" told McKeithan in July several days after the child's return to her home about the possible sexual assaults.[2]

## A.

[2] After the state's closing argument, which was not transcribed and is not brought forward on appeal, defendant moved for a mistrial apparently because the prosecutor had argued to the jury that Veal had first reported the sexual assaults described by the child on 22 July 1983. Defendant says the argument was unfair, contrary to the state's own evidence, and not supported by any other evidence in the case. He argues the denial of his motion constitutes reversible error.

We disagree. First, we note defendant failed to register an objection at any time during the prosecutor's argument. Second, the prosecutor properly may argue to the jury facts in evidence and reasonable inferences therefrom, regardless of whether the state or defendant introduced those facts into evidence. Here, although McKeithan, the state's witness, testified contrary to the state's jury argument, Veal, called by defendant, gave testimony which tends to support the argument. Finally, rulings on mistrial motions based on trial error are matters for the exercise of the trial court's discretion. *State v. Rogers*, 316 N.C. 203, 341 S.E. 2d 713 (1986). The ruling here was well within the discretionary ambit of the trial court.

## B.

[3] We likewise find no merit to defendant's argument that denial of his motion to reopen the evidence to permit introduction of the 22 July 1983 report while the jury was deliberating constituted reversible error. Again, this is a discretionary ruling. *State v. Shutt*, 279 N.C. 689, 185 S.E. 2d 206 (1971). Judge Ellis's decision not to reopen the case to admit additional evidence, ". . . being a matter within his discretion, will not be disturbed unless

---

2. In connection with these arguments, defendant moves this Court to amend the record on appeal to add a photograph of a chalkboard drawing used by the jury during its deliberations. The drawing represents the calendar for the last two weeks in July and the first two weeks in August 1983. It shows the jury identified 17, 18 and 19 July as the dates of the offenses charged. For 22 July it wrote "contact with S. Services"; for 4 August, "appointment"; for 8 August, "S. worker"; for 10 August, "doctor"; and for 11 August, "arrest." Defendant's motion is allowed.

it is 'manifestly unsupported by reason,' *White v. White,* 312 N.C. 770, 777, 324 S.E. 2d 829, 832 (1985), or 'so arbitrary that it could not have been the result of a reasoned decision,' *State v. Wilson,* 313 N.C. 516, 538, 330 S.E. 2d 450, 465 (1985)." *State v. Parker,* 315 N.C. 249, 258-59, 337 S.E. 2d 497, 502-03 (1985). A trial judge's decision only amounts to an abuse of discretion if there is "no rational basis" for it. *Id.*

We find ample support for Judge Ellis's decision not to reopen the case and allow the report into evidence. First, no effort was made by defendant during trial to have the report introduced, although defendant knew then of its existence. Second, the evidentiary conflict defendant sought to resolve by introducing the document was relatively insignificant. It concerns whether Veal first mentioned the sexual abuse of her granddaughter to McKeithan on 22 July or on 4 August 1983. The state's case was not based on what Veal knew or reported. It was based on the child's testimony, McKeithan's independent investigation of all the circumstances, and the testimony of Dr. Bernstein.

C.

[4] We find no reversible error in the trial court's denial of defendant's motion to inquire of the jury which document not in evidence it had inquired about. Assuming, arguendo, this was the 22 July 1983 report, we have already noted the relative insignificance of this report. The jury could not have seen it because it was not in evidence. To ask the jury whether it inquired about the report would have been a needless and fruitless exercise.

D.

[5] Finally, the trial court properly denied defendant's motion to poll the jurors after verdict to determine whether they had considered that Veal had made the 22 July 1983 report and whether it contained allegations of possible child abuse. N.C.G.S. § 15A-1240(a) states:

Upon an inquiry into the validity of a verdict, no evidence may be received to show the effect of any statement, conduct, event, or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined.

This statute provides firm ground for the trial court's denial of defendant's motion.

In this trial we find

No error.