495 S.E.2d 700 (1998)
347 N.C. 489
STATE of North Carolina
v.
T.D.R.
No. 172PA97.
Supreme Court of North Carolina.
February 6, 1998.
*701 Michael F. Easley, Attorney General by Gail E. Weis, Assistant Attorney General, for the State.
Kevin P. Bradley, Durham, for defendant-appellant.
*702 American Civil Liberties Union of North Carolina Legal Foundation by Sandy S. Ma and Deborah K. Ross, Children's Law Center by Phillip H. Redmond, Jr., amici curiae.
MITCHELL, Chief Justice.
By juvenile petitions filed 22 August 1996, defendant, then fifteen years old, was alleged to be delinquent by reason of his having committed first-degree rape and first-degree burglary. A hearing was held pursuant to N.C.G.S. §§ 7A-608 and -609 in District Court, Durham County, on 3 December 1996 before the Honorable Carolyn D. Johnson, District Court Judge. Defendant waived his right to present evidence and stipulated that probable cause did exist. Defendant then requested a two-week continuance in order that independent psychological evaluations could be performed and offered as evidence concerning the issue of whether his case should be transferred to Superior Court for his trial as an adult. The District Court denied the continuance and then proceeded to take evidence on the question of transfer. At the conclusion of the hearing, the District Court entered an order finding probable cause as to both rape and burglary and transferring jurisdiction over defendant to Superior Court for defendant's trial as an adult.
On 16 December 1996, defendant was indicted by the grand jury of Durham County for first-degree rape and first-degree burglary. Subsequently, on 21 January 1997, defendant was indicted for first-degree kidnapping.
On 15 January 1997, defendant filed a motion in Superior Court, Durham County, to dismiss the indictments against him and to remand jurisdiction of his case to the Juvenile District Court. On 24 January 1997, a hearing on defendant's motion to dismiss was held in the Superior Court, Durham County, before the Honorable David Q. LaBarre. On 29 January 1997, defendant filed an amended motion to dismiss. On 7 February 1997, the Superior Court entered an order making findings and concluding inter alia that "[t]he District Court ... [had] denied the Juvenile-Defendant Due Process of law and fundamental fairness by its refusal to hear or consider the juvenile's evidence with regard to the appropriateness of retaining jurisdiction in the District Court Division." The order went on to vacate and dismiss the indictments against defendant and to remand jurisdiction to the District Court for a new hearing as to whether the District Court should retain jurisdiction or transfer jurisdiction over the juvenile to the Superior Court.
On 10 February 1997, the State filed a petition in the Superior Court, Durham County, for a temporary stay of its 7 February 1997 order. On 13 February 1997, the State filed a notice of appeal to the Court of Appeals. On 19 February 1997, the State filed in the Court of Appeals a petition for writ of supersedeas and motion for temporary stay. A temporary stay was entered by the Court of Appeals on 27 February 1997. On 28 February 1997, the Superior Court entered an order concluding that it lacked jurisdiction because of the filing of the notice of appeal with the Court of Appeals and denying the State's motion for reconsideration.
On 10 March 1997, the State filed a petition for writ of certiorari with the Court of Appeals. On 26 March 1997, the Court of Appeals entered an order as follows:
Because orders of the district court transferring the jurisdiction over a juvenile to superior court pursuant to N.C. Gen. Stat. 7A-608 (1995) are subject to review only by [the Court of Appeals] after entry of a final judgment by the superior court, the superior court is without authority to review transfer orders. The order entered 7 February 1997 by Judge David Q. LaBarre, reviewing the district court's order transferring jurisdiction over the juvenile to the superior court, is hereby vacated. The matter is remanded to Superior Court, Durham County, for reinstatement of the indictments dismissed in that order and for further proceedings.
(Citation omitted.)
Defendant filed a notice of appeal of right with this Court asserting that this case directly involves a substantial constitutional question. His petition for discretionary review *703 as to additional issues was allowed by this Court on 8 May 1997.
Defendant contends on this appeal that the Superior Court had authority under N.C.G.S. § 15A-954 to review the indictments against him and to dismiss them if it found that defendant's constitutional rights had been "flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution." Before we can address this argument directly, however, it is necessary that we first address the order of the Court of Appeals which is before us.
Defendant expressly based his motion in the Superior Court to dismiss the criminal charges against him upon the authority of N.C.G.S. § 15A-954, and the Superior Court entered its order dismissing the indictments on the authority of this statute. Nevertheless, the order of the Court of Appeals vacating the order of the Superior Court did not address the issue of the Superior Court's authority to review indictments. Instead, the Court of Appeals addressed the question of whether the Superior Court had authority to directly review District Court orders transferring jurisdiction over juveniles pursuant to N.C.G.S. § 7A-608. The Court of Appeals held that such orders are subject to review only by the Court of Appeals and only after entry of a final judgment by the Superior Court on the criminal charges against the defendant who is to be tried as an adult. This issue was not before the Court of Appeals and is before this Court only by virtue of the appeal from the order of the Court of Appeals addressing the issue. Nevertheless, we must first address this issue before reaching the issues addressed by the parties.
Although the Court of Appeals followed its own precedents, it erred in holding that it is only after the entry of a final judgment by the Superior Court in a criminal case against a juvenile that the juvenile may appeal the earlier order of the District Court transferring jurisdiction. We conclude that N.C.G.S. § 7A-666 authorizes an immediate direct appeal to the Court of Appeals of a juvenile transfer order. The statute expressly provides:
Upon motion of a proper party as defined in G.S. 7A-667, review of any final order of the court in a juvenile matter under this Article shall be before the Court of Appeals.... A final order shall include:
....
(2) Any order which in effect determines the action and prevents a judgment from which appeal might be taken[.]
N.C.G.S. § 7A-666(2) (1995). Because the juvenile transfer order terminates the jurisdiction of the District Court by transferring jurisdiction to the Superior Court, a juvenile transfer order entered by the District Court is a final order within the meaning of the statute. The transfer order in effect "determines" the District Court juvenile proceeding and prevents any further judgment of the District Court from which appeal might be taken. Although upon entry of a transfer order the Superior Court obtains jurisdiction over the case for trial and related matters, it does not have authority to conduct an appellate review of the District Court transfer order. Proper appellate jurisdiction lies with the Court of Appealsnot with the Superior Courtfor direct appellate review of District Court orders transferring jurisdiction over juveniles to the Superior Court.
That part of the order of the Court of Appeals concluding that appellate jurisdiction to directly review juvenile transfers lies only with the Court of Appeals was correct. However, we find no authority for the Court of Appeals' conclusion in its order that juvenile transfer petitions entered by the District Court pursuant to N.C.G.S. § 7A-608 are subject to appellate review by the Court of Appeals only "after entry of a final judgment by the superior court." As we have concluded that juvenile transfer orders entered by the District Court are "final" orders of the court in the juvenile matter within the meaning of N.C.G.S. § 7A-666(2), we further conclude that such orders are immediately appealable to the Court of Appeals. To the extent that it may be read as holding to the contrary, In re Green, 118 N.C.App. 336, 453 S.E.2d 191 (1995), is overruled. Therefore, the Court of Appeals erred in its conclusion in the present case that the juvenile transfer *704 order was not immediately appealable to the Court of Appeals.
We next turn to the issue raised on appeal by defendant, which was before the Court of Appeals but was not addressed in its order in the present case. The juvenile defendant argues that the Superior Court had the authority under N.C.G.S. § 15A-954 to review and dismiss the criminal indictments against him and to remand his case to the District Court for a new hearing on the issue of whether jurisdiction over his case should be transferred to the Superior Court. Although we have concluded that the Superior Court did not have appellate jurisdiction to directly review the District Court's transfer order, we nevertheless conclude that the Superior Court had authority, on motion of defendant, to review the indictments against defendant and to dismiss those charging instruments if defendant's rights were "flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution." N.C.G.S. § 15A-954(a)(4) (1997). To the extent the Court of Appeals' order in the present case may be read to imply that the Superior Court may not review criminal pleadings filed against a juvenile in Superior Court, that order is in error. Criminal pleadings against a juvenile in such situations are neither more nor less subject to review by the Superior Court than criminal pleadings against an adult.
By another argument, defendant contends that the Superior Court's order vacating the indictments against him and remanding his case to District Court was correct. He contends that this is so because the District Court violated his rights to due process of law and to the law of the land by transferring jurisdiction over him to the Superior Court without granting him an opportunity to present evidence. The Court of Appeals appears to have vacated the order of the Superior Court on the mistaken assumption that the Superior Court had conducted direct appellate review of the District Court's transfer order. Instead, we conclude that the Superior Court conducted an appropriate review of the proceedings in District Court that ultimately resulted in the indictments against defendant, which review was authorized by N.C.G.S. § 15A-954. The Court of Appeals did not address the issue raised by defendant in this argument. Accordingly, it would be proper for this Court to remand this case to the Court of Appeals for it to consider and decide whether the Superior Court erred in its exercise of the jurisdiction granted it under N.C.G.S. § 15A-954. Nevertheless, in the interest of judicial economy, we now address that issue which was properly before the Court of Appeals and is properly before this Court.
The procedure for finding probable cause and transferring a juvenile to Superior Court for trial as an adult is governed by three provisions of the Juvenile Code. N.C.G.S. §§ 7A-608 to -610 (1995). The authority of the District Court to transfer jurisdiction over a juvenile to Superior Court for trial as in the case of an adult is provided by N.C.G.S. § 7A-608 as follows:
The court after notice, hearing, and a finding of probable cause may transfer jurisdiction over a juvenile to superior court if the juvenile was 13 years of age or older at the time the juvenile allegedly committed an offense that would be a felony if committed by an adult. If the alleged felony constitutes a Class A felony and the court finds probable cause, the court shall transfer the case to the superior court for trial as in the case of adults.
Further, N.C.G.S. § 7A-609 provides that the District Court "shall conduct a hearing to determine probable cause in all felony cases in which a juvenile was 13 years of age or older when the offense was allegedly committed." N.C.G.S. § 7A-609(a). However, "[c]ounsel for the juvenile may waive in writing the right to the hearing and stipulate to a finding of probable cause." Id. At the probable cause hearing, the juvenile must be represented by counsel in accordance with N.C.G.S. § 7A-584 and may testify as a witness in his own behalf, call and examine other witnesses, and produce other evidence in his behalf. N.C.G.S. § 7A-609(b).
Although the State argues that the rights accorded a juvenile by N.C.G.S. § 7A-609 apply only to the District Court's determination of probable cause, we conclude that the *705 legislature intended that such rights also be accorded the juvenile with regard to the District Court's consideration and decision as to whether to transfer jurisdiction over the juvenile to Superior Court for trial as an adult. N.C.G.S. § 7A-610 appears clearly to contemplate that the decision as to whether to transfer jurisdiction ordinarily will be made as a part of the same hearing at which probable cause is determined. Under N.C.G.S. § 7A-608, if the alleged felony constitutes a Class A felony and the District Court finds probable cause, the District Court is required to transfer the case to Superior Court for trial and would do so automatically as part of the order finding probable cause. Under N.C.G.S. § 7A-610, if probable cause is found and a transfer of jurisdiction to Superior Court is not required by reason of the alleged crime being a Class A felony, the prosecutor or the juvenile may immediately move that the case be transferred to Superior Court for trial as in the case of an adult. N.C.G.S. § 7A-610(a). The District Court may then immediately proceed to determine whether the needs of the juvenile or the best interest of the State will be served by transfer of the case to Superior Court. Id. We simply do not believe that the legislature intended that the rights accorded the juvenile by N.C.G.S. § 7A-609 would apply only with regard to the District Court's determination of probable cause and not to its decision to transfer the case, since the District Court is authorized to make both those determinations in a single hearing and, in the great run of cases, does so.
Additionally, to hold that a juvenile did not have the right to a hearing and to produce evidence in his own behalf on the issue of transfer of jurisdiction to the Superior Court for his trial as an adult would unnecessarily raise substantial questions as to the constitutionality of our procedures for conducting the transfer hearing contemplated by the statutes under consideration here. See Breed v. Jones, 421 U.S. 519, 528-29, 95 S.Ct. 1779, 1784-85, 44 L.Ed.2d 346, 355 (1975) (noting that the Supreme Court's response to the gap between the originally benign conception of the juvenile court system and its realities "has been to make applicable in juvenile proceedings constitutional guarantees associated with traditional criminal prosecutions"); see also In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Where one of two reasonable constructions of a statute will raise a serious constitutional question, it is well settled that our courts should adopt the construction that avoids the constitutional question. In re Arthur, 291 N.C. 640, 642, 231 S.E.2d 614, 616 (1977); In re Appeal of Arcadia Dairy Farms, Inc., 289 N.C. 456, 465-66, 223 S.E.2d 323, 328-29 (1976); cf. Kent v. United States, 383 U.S. 541, 557, 86 S.Ct. 1045, 1055, 16 L.Ed.2d 84, 95 (1966) (statutory construction "in the context of constitutional principles relating to due process and the assistance of counsel"). Accordingly, we conclude that when read in pari materia, N.C.G.S. §§ 7A-608, -609, and -610 were intended by our legislature to provide a juvenile the right to a hearing on the issue of whether his case should be transferred to the Superior Court for his trial as in the case of an adult and the rights, among others, to be represented by counsel in accordance with N.C.G.S. § 7A-584, to testify as a witness in his own behalf, to call and examine witnesses, and to produce other evidence in his own behalf.
We next turn to the application of the foregoing principles to the facts presented by the record in this case. In the present case, the juvenile petitions were filed against the juvenile defendant, T.D.R., on 22 August 1996. Thereafter, continuances resulting from no fault on the part of the juvenile or the State prevented the holding of the probable cause hearing required by N.C.G.S. § 7A-609 until 3 December 1996more than three months after the juvenile petitions had been filed. At the hearing, counsel for the juvenile waived the right to a hearing on the issue of probable cause and stipulated to a finding of probable cause. Counsel for defendant then requested a continuance of the hearing until 17 December 1996 in order to obtain forensic psychological evaluations of defendant and to gather evidence concerning treatment alternatives if the District Court retained jurisdiction over the juvenile. The *706 State objected to the motion for continuance, and the District Court proceeded to take evidence on the issue of transfer. The district attorney put on evidence concerning the manner in which the victim alleged that the juvenile defendant had forcibly broken into her home, armed with a knife. The district attorney also presented evidence that defendant forced the victim to enter the bedroom of the home at knifepoint and take off her clothes and that defendant attempted to have sex with her. The district attorney then stated, "Your Honor, that would be all for the foundation of evidence for the Court."
Counsel for defendant renewed defendant's motion for a continuance to be allowed to gather evidence to present at a later time as to whether the District Court should retain jurisdiction. The district attorney then called Carolyn Cordasco, a coordinator of the Adolescent Sex Offender Program for Durham County Mental Health. She testified that she had worked exclusively with adolescent sex offenders for three years. She further testified:
I've spent approximately twelve years with sex offenders and I spent five years in the prison system in Kansas, starting sex offender programs and working there, and then five years here in North Carolina. And I started the adult sex offender program and then went to Central Prison for the last couple of years to work with violent offenders and rapists in a combination program.
[DISTRICT ATTORNEY:] Okay. So you would say over the last twelve years this has been your specialty?
[MS. CORDASCO:] Absolutely.
The district attorney then asked if Ms. Cordasco had heard the evidence presented at the hearing concerning the factual basis of the charges against the juvenile defendant. She indicated that she had. The following colloquy then occurred between the district attorney and the witness:
[DISTRICT ATTORNEY:] And in the consideration, this juvenile was fifteen years old. What would your opinion or could you give onedo you have enough information to give an opinion regarding the nature of this act and the feasibility of this juvenile being treated as a juvenile or by the nature of this act, in your opinion, do you believe he wouldis a threat to the community and should be transferred as an adult and treated as an adult? If you can answer that.
[MS. CORDASCO:] I listened to the facts that the detective presented and based on my experience, working with both adults and juveniles and working in North Carolina's juvenile and adult system, it's, you know, my opinion that this young man committed a very sophisticated sexual crime based on the use of a weapon. It was obviously planned. I mean, he had a bandana. He was out there. He also interjected putting his arm around her neck, which at any time, I don't know if he actually cut her air off, but that certainly is very frightening because the victim would not know would he [sic] do that. And then putting her in a closetin a dark closet. All these things are very, very sophisticated for someone so young.
In the juvenile system they do not have the capacity to treat this serious an offense. The adult system does. Unfortunately he would go into the youth system first and he would have to wait until he was twenty-two to get sex offender treatment. However, I do think the crime, in and of itself, puts him at extremely high risk to re-offend. There's usually a time thing. He apparently, from what I hear, has done fairly good in the community. But I think he's a very high risk for re-offending and I don't think the juvenile systemnot my program, nor the one at Dillon or at Swannanoawould be equipped to handle this serious of a crime.
He also needs some time withinaway from the community, within the system, to be seasoned enough to even be amenable to this kind of treatment.
Counsel for defendant then cross-examined the witness. During cross-examination, Ms. Cordasco testified that based on her twelve years' experience working with men who rape, such men were usually given standard psychological tests to reveal depression or psychosis, but that she did not know of any test that would assist in predicting the possibility *707 of such a person's reentry into the community or the risks he posed to the community.
Counsel for defendant offered no evidence at the conclusion of the evidence for the State. The District Court then ruled as follows:
On what I've already heard, I have to consider that if T.D.R. were to remain in the Juvenile Court jurisdiction and [be] sent to C.A. Dillon or some other training school, I believe that at age eighteen he would be released, whether he had improved or he had not improved, whether he had been treated or not.
And with thejust with the evidence that I have now, I feel that we have been about as thorough and lenient as we can be on him. I'm going to have him transferred to Superior Court.
The District Court denied the motion and entered an order finding probable cause and transferring jurisdiction over the juvenile defendant to the Superior Court and giving the reasons for the transfer. In its order, the District Court stated that the needs of the juvenile, or the best interests of the State, or both, would be served by transfer of the case to Superior Court. The order also stated as reasons for the transfer that
[t]he attorney for the juvenile waived probable cause after having received laboratory results which the juvenile's attorney had processed. The Court finds that juvenile services would not be adequate to rehabilitate the juvenile and/or protect the community. The fact that this juvenile would automatically be released from Division of Youth Services at age 18 weighs heavily on the Court & would be inappropriate in this case to retain at the juvenile level.
Thereafter, the grand jury of Durham County indicted defendant for the crimes charged. The juvenile defendant then moved under N.C.G.S. § 15A-954(a) that the Superior Court dismiss the indictments and remand the case against him to the District Court "for a full and meaningful transfer hearing." After reviewing the transcript of the hearing before the District Court and other documents in the District and Superior Court files, the Superior Court made findings and conclusions and ordered that the indictments against defendant be vacated. Defendant contends that the Superior Court properly entered this order. For the following reasons, we disagree.
In one of its conclusions of law in support of its order, the Superior Court concluded that "[t]he District Court in this case denied the Juvenile-Defendant Due Process of law and fundamental fairness by its refusal to hear or consider the juvenile's evidence with regard to the appropriateness of retaining jurisdiction in the District Court Division." This conclusion by the Superior Court does not find support either in the Superior Court's findings of fact or in the transcript of the hearing held by the District Court on the issue of transfer. The only finding by the Superior Court related to this issue was that the juvenile defendant had been denied the opportunity to present evidence contradicting the expert testimony of the State's witness, Ms. Cordasco. Specifically, the Superior Court found that "[c]ounsel was denied an opportunity to do so by [the denial of] a two-week continuance." This finding was in response to the only argument made by defendant before the Superior Court and before this Court as to why his constitutional rights were violated.
Defendant did not contend before the Superior Court, and does not argue before this Court, that the District Court refused to hear or consider any evidence he sought to introduce. The transcript of the District Court hearing does not reflect that defendant was ever prevented from introducing evidence. Instead, the transcript reveals that at each point at which defendant could have offered any evidence he had on the issue of transfer, defendant, through counsel, renewed his motion for a continuance to gather such evidence. The argument defendant made before the Superior Court and here is that the District Court's order violated his constitutional rights by denying his motion for a continuance of the hearing to gather evidence.
Whether to allow or deny a motion to continue any legal proceeding is a matter ordinarily addressed to the sound discretion *708 of the trial court, and its ruling is not reversible on appeal absent an abuse of discretion. State v. Jones, 342 N.C. 523, 530, 467 S.E.2d 12, 17 (1996). We recognize that numerous decisions of the appellate courts of this state have indicated that, in such situations, the appealing party must demonstrate a "gross abuse" or "manifest abuse" of discretion. We further recognize that our use of such phrases has created some confusion as to whether there is more than one standard for, or type of, abuse of discretion; there is not. Our use of phrases such as "gross abuse" and "manifest abuse" of discretion originated in earlier cases, before the term "abuse of discretion" had been given any definitive meaning. E.g., State v. Gibson, 229 N.C. 497, 50 S.E.2d 520 (1948); State v. Farrell, 223 N.C. 321, 26 S.E.2d 322 (1943). More recently, however, we have given a more complete and definite meaning to the legal term "abuse of discretion" by holding that an abuse of discretion is established only upon a showing that a court's actions "are manifestly unsupported by reason." White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 832 (1985). Further, we have emphasized that any "ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." Id. Any such abuse of discretion is a fortiori "gross" or "manifest" as those terms have been used in prior cases of the appellate courts of this state. There is but one type of abuse of discretion.
For clarity, we reemphasize that a motion for continuance is ordinarily addressed to the sound discretion of the trial court. In such cases, the trial court's ruling will not be disturbed unless it is manifestly unsupported by reason, which is to say it is so arbitrary that it could not have been the result of a reasoned decision. Id.; State v. Wooten, 344 N.C. 316, 337, 474 S.E.2d 360, 372 (1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1270, 137 L.Ed.2d 348 (1997); State v. Mutakbbic, 317 N.C. 264, 273, 345 S.E.2d 154, 158 (1986). However, if the motion to continue is based on a constitutional right, the trial court's ruling thereon presents a question of law that is fully reviewable on appeal. Jones, 342 N.C. at 530, 467 S.E.2d at 17; State v. Smith, 310 N.C. 108, 112, 310 S.E.2d 320, 323 (1984). Here, defendant has argued, as he argued in the Superior Court, that the District Court's denial of his motion for a continuance to gather evidence on the issue of whether jurisdiction over him should have been transferred to the Superior Court denied him the constitutional right of presenting evidence on his own behalf.
Defendant contends that the denial of his motion for a continuance prevented his introducing evidence in his own behalf because he simply did not have adequate time to gather such evidence. The record indicates that defendant gave no reason at the hearing before the District Court as to why the time he had been allowed to gather evidence and prepare for its presentation had not been sufficient. The record indicates that defendant was on notice of the allegations against him from the date of the filing of the juvenile petitions on 22 August 1996. The holding of a probable cause hearing was delayed in part because of the District Court's accommodation of defendant's request that his own experts be permitted to conduct DNA testing on the State's evidence prior to a determination of probable cause. The State relinquished custody of its as-yet-unanalyzed evidence for such testing by defendant's experts in response to a court order. A probable cause hearing was set for 18 November 1996. On 4 November 1996, defendant moved for a continuance of that hearing. The District Court granted his motion and continued the probable cause hearing until 3 December 1996.
Defendant made no further motion for a continuance until after he had appeared at the 3 December 1996 hearing and stipulated that probable cause existed. His motion to continue was made orally at that time. Defendant offered no explanation as to why the more than three months from 22 August 1996 until 3 December 1996 had not been a sufficient time for him to secure any necessary evidence. Further, defendant submitted no affidavits to the District Court indicating any fact that might be proved by any witness if the continuance were granted.
*709 This Court has stated that "before ruling on a motion to continue the judge should hear the evidence pro and con, consider it judicially and then rule with a view to promoting substantial justice." Shankle v. Shankle, 289 N.C. 473, 483, 223 S.E.2d 380, 386 (1976). Here, the District Court allowed both defendant and the State to be heard on the motion to continue before ruling. No evidence was offered with regard to the motion. In light of the fact that defendant had more than three months to prepare and that the District Court continued the hearing date more than once and entered orders assisting defendant in gathering evidence when requested, we conclude that the District Court did not abuse its discretion or commit any constitutional error in denying defendant's motion for a further continuance. See Jones, 342 N.C. at 531, 467 S.E.2d at 18 (denial of continuance not error or abuse of discretion where defendant's oral motion to continue to secure psychiatric evaluation was made on the date set for trial, was not supported by affidavit, and did not set forth detailed proof to establish grounds for further delay); State v. McCullers, 341 N.C. 19, 32-33, 460 S.E.2d 163, 171 (1995) (same); State v. Branch, 306 N.C. 101, 105, 291 S.E.2d 653, 657 (1982) (same); State v. Searles, 304 N.C. 149, 155, 282 S.E.2d 430, 434 (1981) (same); State v. Cradle, 281 N.C. 198, 208, 188 S.E.2d 296, 303 (same), cert. denied, 409 U.S. 1047, 93 S.Ct. 537, 34 L.Ed.2d 499 (1972).
Defendant further argues that the District Court erred in denying a continuance because he did not have notice that the issue of transfer of jurisdiction to Superior Court would be considered at the probable cause hearing. We disagree. The applicable statutes themselves give notice that upon a finding of probable cause, either the juvenile or the prosecutor may make a motion for transfer of jurisdiction to the Superior Court and that the District Court may immediately proceed to a ruling on such motion. N.C.G.S. §§ 7A-608, -610(a). Further, the transcript of the hearing reveals that defendant had notice in fact that the hearing on the issue of transfer of jurisdiction would or might be held immediately upon a finding of probable cause. Counsel for defendant implicitly acknowledged being on such notice when she stated during the hearing, "[W]e are waiving probable cause at this time and we're going to ask, Judge, that we have a continuance of the transfer hearing until December 17th." Additionally, after the District Court had announced that it would enter an order transferring defendant to the jurisdiction of the Superior Court, counsel for defendant indicated actual prior notice that the issue of transfer would be considered by stating:
Your Honor, I know you've made your ruling on this and I would ask you to reconsider for this one reason. Ms. Cordasco testified that one of the things they look for when they have people coming to their program is an MMPI and some of the same testing that he's going through right now. We don't havewe've not had an opportunity to present any evidence to show whether or not there is anything in the juvenile system that could help him and we would have recommendations from our forensic psychologist that could tell the Court and give the Court more of a basis in which whether or not this thing should be transferred to adult court.
We understand this is a serious crime and we understand we have waived probable cause and that's one of the things we took a chance on when we waived it ....
(Emphasis added.) This argument by defendant is without merit.
The Superior Court also based its order vacating the indictments against defendant and purporting to remand jurisdiction to the District Court upon another ground. The Superior Court concluded as a matter of law that the District Court order transferring jurisdiction "was not supported by competent evidence" to the extent that it was based upon the reason that there was "a lack of rehabilitative services for this juvenile in the Juvenile Court Division." This conclusion by the Superior Court is not supported by the transcript of the District Court hearing or by any other document that was before the Superior Court. Instead, it seems that the Superior Court's conclusion was based on its disagreement with the testimony of the State's expert and with the District Court's *710 action based on that evidence. Therefore, the Superior Court erred in this conclusion.
The State's expert, Ms. Cordasco, testified in detail as to her lengthy experience and qualifications. Defendant never objected to her testimony and never requested that the court make any findings of fact. Cf. State v. Bullard, 312 N.C. 129, 322 S.E.2d 370 (1984) (trial court did not err in permitting witness to testify as an expert without making findings of fact as to her qualifications where defendant did not specifically request that the court make such findings). In the absence of a request by defendant for the trial court to make a finding concerning the qualifications of a witness as an expert, it is not necessary that the record show an express finding on this issuethe finding being deemed implicit in the ruling admitting or rejecting the opinion testimony of the witness. State v. Perry, 275 N.C. 565, 169 S.E.2d 839 (1969). This is particularly true where, as here, there is ample evidence to support a finding that the witness is an expert or where, as here, defendant does not object to the witness' being found to be an expert. State v. Mitchell, 283 N.C. 462, 196 S.E.2d 736 (1973) (evidence to support a finding that the witness was an expert); Perry, 275 N.C. 565, 169 S.E.2d 839 (no objection to witness' being treated as an expert). Where, as here, there was sufficient evidence to support a finding that the witness was an expert, it is presumed that the court found the witness to be an expert before admitting the testimony, notwithstanding the absence of a specific finding to this effect. Olan Mills, Inc. v. Cannon Aircraft Executive Terminal, Inc., 273 N.C. 519, 160 S.E.2d 735 (1968). Therefore, the Superior Court erred in its findings and conclusion to the effect that there was no competent expert evidence before the District Court on the issue of the availability of rehabilitative services for defendant as a juvenile and that the order of the District Court must be vacated for that reason.
For the foregoing reasons, the order of the Superior Court vacating and dismissing the indictments against defendant and purporting to remand jurisdiction to the District Court was in error and must be reversed. However, the order of the Court of Appeals did not reverse the order of the Superior Court. Instead, the Court of Appeals, proceeding on the mistaken assumption that the Superior Court acted without jurisdiction, vacated the order of the Superior Court. The Court of Appeals erred in vacating the order of the Superior Court rather than reversing that order.
As previously explained in this opinion, once the District Court has transferred jurisdiction over a juvenile to the Superior Court, the Superior Court has complete jurisdiction, including jurisdiction and authority to hear and dispose of motions to dismiss the charges stated in the criminal pleadings against the defendant in the Superior Court. N.C.G.S. § 15A-954(a). Here, the Superior Court had jurisdiction; it simply committed reversible error. Therefore, the order of the Court of Appeals also must be reversed.
For the foregoing reasons, the order of the Court of Appeals vacating the order of the Superior Court is reversed. The order of the Superior Court vacating and dismissing the indictments against defendant and purporting to remand jurisdiction over the juvenile defendant to the District Court is also reversed. This case is remanded to the Court of Appeals for its further remand to the Superior Court, Durham County, for reinstatement of the indictments against defendant and for further proceedings not inconsistent with this opinion.
ORDER OF THE COURT OF APPEALS: REVERSED;
ORDER OF THE SUPERIOR COURT: REVERSED AND REMANDED FOR REINSTATEMENT OF INDICTMENTS AND FURTHER PROCEEDINGS.